Argued March 20, affirmed May 28, rehearing denied June 25, 1929.

J. W. HAMMONS ET AL. *v.* JOHN ENGLISH.

(277 Pac. 823.)

For appellant there was a brief and oral argument by *Mr. Ernest Cole.*

For respondent there was a brief and oral argument by *Mr. W. D. Freeman.*

ROSSMAN, J.—██ The common counts are permitted in code pleading: Bliss on Code Pleading, §§ 156, 157, 157a, 298 and 299; Phillips on Code Pleading, § 367; Pomeroy on Code Remedies, §§ 15 and 436—8; Clark on Code Pleading, pp. 196–204; Bancroft's Code Pleading, §§ 41, 42 and 913. The complaint alleges the performance of services, the date, the defendant's written request, the value, a written promise to pay and nonpayment. Under the authorities we believe that the foregoing was sufficient to meet the demands of the common counts. In *Bowen & Chambers* v. *Emmerson,* 3 Or. 452, the complaint did not allege a promise to pay, nor nonpayment; both are present in our complaint. The latter is not substantially dissimilar from that approved in *Johnston* v. *Fitzhugh,* 91 Or. 247 (178 Pac. 230), and includes a promise to pay, which was absent in *Pioneer Hardware Co.* v. *Farrin,* 55 Or. 590 (107 Pac. 456); in the latter a judgment for the plaintiff was affirmed; see, also, *Waite* v. *Willis,* 42 Or. 288 (70 Pac. 1034), and *Keene* v. *Eldriedge,* 47 Or. 179 (82 Pac. 803). Neither a motion nor a demurrer was interposed to the complaint. In *Risley* v. *Beaumont,* 71 N. J. Law, 372 (59 Atl. 145), it was held that a real estate broker's commission, earned under an express contract, may be recovered under an allegation of the common counts, and that the contract may be received in evidence in proof of the particulars of the general right so alleged. Our complaint contains more identifying circumstances than the form suggested in Bancroft's Code Pleading, page 1657. We believe that the complaint was sufficient to admit the evidence, hereafter reviewed, and to support the judgment.

The evidence discloses, that the plaintiffs are real estate brokers and that the defendant, at the time of the transaction hereinafter mentioned, was the owner of a farm in Clarke County, Washington. The plaintiffs, the defendant and a third party, whose name was Tom Proffitt, on December 7, 1926, executed a contract for an exchange of plaintiff's property for one in which the said Proffitt was interested, and also for the payment of a commission to the plaintiffs. The formal parts of that document are exactly like those set forth in *Thomson et al.* v. *Silsby et al.*, 120 Or. 501 (252 Pac. 712). The provisions material to the dispute before us, provided that each of the two principals contracted that he was the owner in fee simple of his respective property, and that he was possessed of the right to sell and convey the same; each promised to forthwith furnish an abstract of title, or title insurance, evidencing in himself a marketable title; the contract provided that after delivery of those documents each was afforded five days' time for examination of title, "and a further period of thirty days after delivery of written notice of defects, to correct any defects, should any such appear." Each agreed to convey his property to the other by warranty deed, and the agreement provided that the transaction should be closed within thirty-five days. The contract contains this paragraph:

"And in consideration of the mutual promises herein contained it is further agreed that should either party hereto fail to perform and carry out his part of this agreement, such party, so failing, shall pay all of the broker's commission below provided for, this promise being made directly for said broker's benefit."

The paragraph just quoted, is followed by the signatures of the two principals; these in turn are succeeded by the following:

"I hereby ratify and confirm the employment of J. W. Hammons and J. Brooks, real estate brokers, to find and procure a purchaser for my property above described and in consideration of services performed by said brokers in negotiating and bringing about the foregoing sale, hereby agree to pay said brokers forthwith a commission of Twelve Hundred and no/100 Dollars.

"JOHN ENGLISH."

This paragraph was followed by another, precisely the same, signed by Mr. Proffitt.

■ The exchange of properties was never effected; the evidence presents two explanations of this failure; one version, vouched for by the plaintiff, is to the effect that the defendant declared himself as lacking sufficient financial resources to discharge the undertakings he assumed when he executed the contract; this the defendant denied; the latter's explanation is that Proffitt could not convey his property because he lacked title; this version was in a measure explained away by the plaintiff's witnesses. These conflicting narratives were set at rest, so far as this court is concerned, by the findings of the Circuit Court which declare that Proffitt was "ready, able and willing" to consummate the transaction; that "plaintiffs fully performed their contract of employment"; that the exchange failed through no fault of the plaintiffs, and "that defendant did not plead nor prove that consummation of said contract, so procured by plaintiff, failed through the fault of the other party agreeing to the exchange." Under the practice in this state the findings of that court have

516

the effect of a verdict of a jury, and when there is any substantial evidence in support of them this court is precluded from an examination of the evidence. Since there was evidence to the effect (1) that the transaction failed on account of the fault of the defendant, and (2) that Proffitt was ready, willing and able to discharge his undertaking, we must proceed upon the basis that those propositions are the facts of this case.

■ But even if we should be justified in concluding that Proffitt's title was defective we do not understand that this alone would constitute an obstacle to the plaintiff's recovery. For the sake of a more complete disposition of this controversy we are willing to assume that title to Proffitt's property was not vested in him when the contract was executed. No abstract of title, or certificate of title insurance, as mentioned in the contract, was offered in evidence. The proof that Proffitt lacked title is not entirely satisfactory. Nevertheless, we shall engage in an assumption that such was the case. The contract provided that if the "Ford-Goldab transaction" should be considered a "cloud" upon the plaintiff's title the contract should be null and void, but contained no such condition subsequent in regard to any possible defect in the title of Proffitt to his property. The contract did not expressly make payment of the plaintiff's commissions dependent upon the final consummation of the exchange of properties; to the contrary the paragraph previously quoted, which provides that the commission was payable "forthwith," would seem to imply that the compensation was promised for the brokers' services in securing a party with whom the defendant was willing to contract

and did contract. This inference, arising out of the use of the word "forthwith," assumes considerable cogency when it is remembered that the exchange might not be effected for 35 days. The brokers did not promise that the deal should not fail, but limited their covenants to an agreement "to aid and assist in consummating the foregoing exchange"; there is no contention that they neglected that promise.

It is true that the words of the agreement predicate the promise to pay $1,200 upon a "consideration of services performed * * in negotiating and bringing about the foregoing sale." It may be argued that the use of the word "sale" implies a completed exchange; usually that word denotes a transaction, which has been consummated by the delivery of the title instruments; but, under contracts, of the character before us, it is generally held that the broker has made a sale whenever, through his influence a person ready, able and willing to buy, on the terms proposed, is brought to the principal, or a binding contract is secured: 6 Words & Phrases, 3d series, p. 913. Further the promise to pay the commission forthwith is out of harmony with any contention that the commission is dependent upon the actual completion of the deal. Finally it is worthy of observation that in *Thomson* v. *Silsby, supra,* wherein this court determined the legal effect of those parts of a similar contract, relating to the earning and payment of a commission, it was held that the words quoted constitute "conclusive proof as between the parties of a performed contractual consideration: *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135)." When the plaintiffs brought to the defendant a prospective customer for his property, the latter was not bound to enter

forthwith into an agreement, but was at liberty to investigate the proffered party and determine the advisability of contracting with him. But after executing the contract and attaching thereto a promise to pay a commission for the plaintiff's services in negotiating and bringing about the sale, it is our opinion that the commission was thereupon earned and payable. If thereafter the defendant should conclude that the other party's title was defective, his redress would consist, not in a denial of the commission, but in relief against the other party for breach of contract. Incidentally, it may be mentioned, that after the execution of the contract, each of the two principals recorded his contract and later released each other by some sort of a relinquishment, the precise nature of which is not disclosed by the proof.

In *Henry* v. *Harker*, 61 Or. 276 (118 Pac. 205, 122 Pac. 298), *Anderson* v. *Wallowa Nat. Bank*, 100 Or. 679 (198 Pac. 560), and *Phy* v. *Allen*, 115 Or. 168 (236 Pac. 1056), this court held that a real estate broker may become entitled to his commission by producing either one of the two following results: he may furnish his principal a bonding contract executed by an intending purchaser, who is able to buy, and upon whom, if he fails, the principal may have recourse; or, the broker may bring the buyer and seller together so that they may themselves make the contract and conclude the sale. In our present case we seem to have a fusion of both methods. Under such circumstances it is settled that the brokers should not be denied their compensation because the contract was not performed by the principal for some cause for which the brokers were not responsible: *Walker Real Estate Agency*, § 488; 9 C. J., Brokers, § 86, p. 591; 4 R. C. L., Brokers, § 49.

■ It remains necessary to consider only the provision of the contract which provides; that should either party fail to perform his part of the agreement he shall pay all of the broker's commission and which adds, "this promise being made directly for said broker's benefit." As we have previously observed the aforementioned provision is followed by separate paragraphs, signed respectively by each party, agreeing to pay $1,200 for the services rendered by the plaintiffs to him. The contract nowhere provides for a release from the liability to pay the individual commission of $1,200, unless such release is contained in the paragraph first above mentioned. We do not believe that it was the intention that that paragraph should have such effect; it apparently was intended only as additional protection to the brokers; in other words they were still possessed of their right to proceed against both principals for the individual commission, if they chose. But, in lieu of that method of obtaining their compensation, this provision afforded them recourse against the delinquent party for the entire sum. If this paragraph of the contract released the willing party automatically, and in like manner subjected the other to the additional burden, the broker could rarely collect his compensation "forthwith," but would generally be compelled to await developments lest the transaction might stop short of complete consummation at the last moment. Furthermore, a broker, who saw the agreement fail through no fault of his, might be hard put to determine which of the two, or more, parties was the delinquent one; the case now before us presents an illustration of such difficulties. We conclude that the

provision was not intended to release the willing party in the absence of an election to that effect upon the broker's part; such being the situation the defendant is liable in the sum of $1,200.

AFFIRMED. REHEARING DENIED.

MCBRIDE and BEAN, JJ., concur.

RAND, J., dissents.