294 P.2d 625

**Edward J. KNOEBEL and Darlo Knoebel, Plaintiffs-Appellees,**

v.

**CHIEF PONTIAC, Inc., and General Motors Acceptance Corporation, Defendants-Appellants.**

**No. 6013.**

Supreme Court of New Mexico.

Jan. 31, 1956.

Rehearing Denied March 20, 1956.

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, Robert H. Sprecher, Roswell, for appellant.

Rodey, Dickason, Sloan, Mims & Akin, Charles Larrabee, Albuquerque, for appellees.

Marron & McRae and Joseph Phil Click, Albuquerque, for Chief Pontiac, Inc.

Iden, Johnson & Mechem, and James T. Paulantis, Albuquerque, for General Motors Acceptance Corp.

McAtee & Toulouse, Albuquerque, for appellees.

HENSLEY, District Judge.

Edward J. Knoebel, and his wife, Darlo Knoebel, the plaintiffs and appellees, purchased an automobile from defendant, Chief Pontiac, Inc., one of the appellants. The transaction was evidenced by a conditional sale contract which was assigned by Chief Pontiac, Inc., to General Motors Acceptance Corporation, also a defendant and appellant. Appellees, being in default on the conditional sale contract, delivered the automobile to a representative of General Motors Acceptance Corporation on July 19, 1954 with the understanding that the appellees might secure return of the vehicle by paying the arrearages on the following 1st or 2nd of August. On July 26, 1954 the appellees sought a further extension to August 10, 1954 and were informed that the automobile had been returned to appellant Chief Pontiac, Inc., pursuant to the terms of the original assignment and that the

matter was beyond the control of appellant General Motors Acceptance Corporation. Appellee, Darlo Knoebel, then on the same day contacted appellant Chief Pontiac, Inc., and the record discloses the following conversation transpired:

"Q. As I understand it, you asked him if you could have until the 10th of August to pay off the car? A. Yes.

"Q. Was that the whole conversation? A. Well, he just said that if I could pay up the whole of what was delinquent he could hold the car until the 10th for me.

"Q. That was the whole conversation? A. Yes.

"Q. You never had any more conversation with him until the 7th? A. No."

On August 7, 1954, appellee Darlo Knoebel again went to the office of appellant Chief Pontiac, Inc., to pay the sums delinquent and secure the return of the automobile. Meanwhile, and subsequent to the last conference, the appellant Chief Pontiac, Inc., had sold the car for $495 which was $3.99 less than the amount owing by the appellees. Appellees, being unable to secure return of the automobile instituted suit to recover damages.

The conditional sale contract was received into evidence and contained, among others, the following provisions:

"4. In the event purchaser defaults on any payment due on this contract or fails to comply with any condition of this contract or a proceeding in bankruptcy, receivership or insolvency be instituted against the purchaser or his property, the seller shall have the right, at his or its election, to declare the unpaid balance, together with any other amount for which the purchaser shall have become obligated hereunder, to be immediately due and payable. Further upon such default or event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand (possession after default being unlawful), including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same. Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the purchaser hereunder. Seller may resell said property, so retaken, at public or private sale, without demand for performance, with or without notice to purchaser (if given, notice by mail to address below being sufficient), with or without having such property at place of sale, and upon such terms and in such manner as seller may determine; seller may bid at any public sale. From proceeds of any such sale, seller shall deduct all expenses for retaking, repairing and selling such property including a reasonable attorney's fee. The balance thereof shall be applied

to amount due; any surplus shall be paid over to purchaser; in case of deficiency purchaser shall pay the same with interest. Seller may take possession of any other property in the above described motor vehicle at time of repossession, wherever such other property may be therein, and hold same temporarily for purchaser without liability on the part of the seller."

At the conclusion of the trial, the appellants made timely request that the trial court conclude as a matter of law that paragraph numbered four, supra, gave the defendants (appellants) the legal right to take possession of the car upon default by the purchasers, and to sell the same at private sale, without notice to the plaintiffs. Also, at the conclusion of the trial, the appellants tendered a further requested conclusion of law as follows: "Any promises secured by plaintiffs that the car would be held and not sold were without consideration, since the plaintiffs did not agree to do anything they were not legally obligated to do and did not communicate to defendants any indication that they might have to suffer detriment, nor was any benefit received by defendants for any such promise."

Appellants here urge that the trial court's refusal to so find constitutes reversible error and thus they seek relief from the trial court's decision awarding plaintiffs a judgment against the defendants in the sum of $296.04 for breach of the oral agreement.

A provision for enforcing a conditional sale contract similar to the one quoted above has been before this court and was held enforceable. See General Motors Acceptance Corporation v. Ballard, 37 N.M. 61 at page 64, 17 P.2d 946, at page 947:

"* * * It will be seen that paragraph 6 of the contract, above quoted, specifically provides that, if the purchaser makes default in the payment, the vendor may take immediate possession of the property without demand, and resell the property so taken, at public or private sale with or without notice, and apply the proceeds arising from such sale to the expense of retaking, reselling, and repairing the property, together with a reasonable attorney's fee, and apply the balance arising from such sale on the amount due under the contract, and, if any surplus remains, it should be paid over to the purchaser, and, if the property at such sale does not bring a sufficient sum to pay the full amount contracted to be paid, the vendor may have his right of action to recover such deficiency.

"Without discussing the fairness or unfairness of this clause of the contract, it is clear as to its terms, and we know of no legal inhibition, preventing its enforcement."

In view of the foregoing, it was error for the trial court to refuse to adopt the conclusion of law requested by the defendants;

the contract gave them the legal right to take possession of the car upon default by the purchasers and to sell the same at private sale without notice to the plaintiffs.

Lastly, the appellants contend that the alleged promise of the appellants to postpone enforcement of their remedies under the conditional sale contract was without consideration and unenforceable.

The mere fortuitous presence of circumstances that might constitute consideration for an agreement is not enough, but consideration, like every other element in a contract must be bargained for by the parties, and their minds must meet upon the consideration which is to support a promise. See Gross, Kelly & Co. v. Bibo, 1914, 19 N.M. 495 at page 515, 145 P. 480; Yuma Nat. Bank v. Balsz, 1925, 28 Ariz. 336, 237 P. 198. Also see, Goodman Mfg. Co. v. Mammoth Vein Coal Co., 1918, 185 Iowa 253, 168 N.W. 912, wherein it was held that in order to constitute a consideration for an extension of time for the payment of a debt, there must be a benefit to the creditor or a detriment to the debtor. The creditor must secure, by reason of the extension, something which he could not otherwise demand, or the debtor must do or obligate himself to do something which he would not be bound to do in the absence of the agreement. The rule is succinctly stated in 17 C.J.S., Contracts, § 112, p. 465:

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit."

The factual situation in Lynch v. Sable-Oberteuffer-Peterson, 1927, 122 Or. 597, 260 P. 222, 55 A.L.R. 180, is strikingly similar to the case at hand and the conclusion there announced is compatible with ours. See, also, Assets Realization Co. v. Ganus, 25 Ala.App. 113, 141 So. 721; McLean v. Underdal, 73 N.D. 74, 11 N.W.2d 102; Annotations, 37 A.L.R. 91, supplemented in 83 A.L.R. 959, and 99 A.L.R. 1288.

The trial court erred in awarding damages for breach of the alleged oral agreement. The judgment will be reversed and remanded with directions to set aside the judgment against the appellants and enter a judgment dismissing the complaint, and it is so ordered.

COMPTON, C. J., and LUJAN and SADLER, JJ., concur.

McGHEE, J., having recused himself did not participate.