306 P.2d 1098

Rudy MONTOYA, Plaintiff and Appellant,

v.

McCALLISTER AUTO CO., Inc., a domestic corporation, Central National Insurance Company of Omaha, Nebraska, a Nebraska corporation, and Securities Acceptance Corp., a Delaware corporation, Defendants and Appellees.

No. 6101.

Supreme Court of New Mexico.

Jan. 29, 1957.

A. T. Montoya, Albuquerque, for appellant.

Marron & McRae and Joseph Phil Click, Albuquerque, for McCallister Auto Co.

Gino J. Matteucci, Albuquerque, for Central Nat. Ins. Co.

McAtee, Toulouse & Marchiondo, Albuquerque, for Securities Acceptance Corp.

SADLER, Justice.

The plaintiff as an appellant before this Court complains of a summary judgment of dismissal with prejudice rendered against him by the district court of Sandoval County in favor of the defendants in an action in which he sought damages in the sum of $5,000 for the alleged conversion by defendants of a 1½ ton Studebaker certain truck said to have been owned by him. The parties will be referred to here as they were aligned below.

The plaintiff had purchased a motor truck from McCallister Auto Company, Inc., one of the defendants, giving as security therefor a note and chattel mortgage for the balance of the unpaid purchase price. The McCallister Company transferred the note and mortgage to Securities Acceptance Corporation, also one of the defendants, with which company the McCallister Company had a repurchase agreement in case it should become necessary to repossess the truck. The plaintiff was provided an automobile insurance policy giving coverage, among other things, against loss by fire.

The insurer was the Central National Insurance Company, a Nebraska corporation, likewise a defendant herein. The policy issued was made payable to the plaintiff and the Securities Acceptance Corporation in event of loss, as their respective interests might appear. Thereafter, a fire occurred in which the truck suffered sub-

stantial damage of such a nature, as alleged in the complaint, that the insurer above named became liable to the plaintiff for the value of the motor truck, subject to the amount of any and all current indebtedness then due defendant, Securities Acceptance Corporation.

The complaint goes on to allege that the three named defendants then took possession of the truck for purposes of inspection and determining the fire damage suffered, and with plaintiff's permission removed same from the ranch of plaintiff's father, where it was, to a certain place of business in Albuquerque under control of the defendants. It is asserted by plaintiff that the three defendants named, having possession of the truck as aforesaid, conspired together to convert, and did convert it to their own use and to deprive plaintiff of the possession thereof.

The defendants answered, McCallister Auto Company setting up that the motor truck was delivered to it at its place of business for repairs and resale upon being repossessed by Securities Acceptance Corporation, one of the defendants. Securities Acceptance Corporation also answered, pleading plaintiff's several delinquencies and, that McCallister Auto Company, Inc., paid them off on August 29, 1952, and obtained reassignment and endorsement of the note and mortgage which plaintiff had executed to secure payment of balance of purchase price for the motor truck. And, in like fashion, Central National Insurance Company of Omaha, Nebraska, also answered, admitting certain allegations in the complaint, denying others, and setting up as an affirmative defense the payment to securities Acceptance Corporation, holder at the time of the note and mortgage on the truck, of estimated damage thereto in the sum of $732.44 from the fire mentioned, discharging its liability under the policy of insurance it carried on the truck.

In due season after the filing of these answers, the depositions of numerous witnesses and parties were taken, some as adverse parties, either by stipulation of the parties, or pursuant to notice and their testimony was transcribed and filed in the cause. Several motions to dismiss, not necessary now to mention were later filed, as well as a motion for change of venue, some of which were denied and others not acted upon, hearings thereon presumably being waived.

The motion to dismiss, however, the granting of which is made the basis of the trial court's summary dismissal, was one joined in by all three parties defendant. In it, after a recitation of various facts appearing from the pleadings and depositions by way of admissions or of an indisputable character, the defendants interposed the plea that there was no material issue of fact in dispute between the parties, the record thus showing the plaintiff was not entitled to the relief prayed for. The de-

fendants then concluded that, by reason of the premises, summary judgment against the plaintiff should be granted for which they prayed.

This motion for judgment came on for hearing before the court, prior to the time the case was reached for trial and the court having heard the argument of counsel for all the parties, for and against the granting of the motion, entered its order sustaining the same, which order, omitting the formal portions, reads:

"  *   *   *   and the Court having read the pleadings, depositions and affidavits filed of record, and after hearing the oral arguments of counsel, and being otherwise fully advised in the premises, Finds:

"1.   That there is no genuine issue of fact and that upon the present state of record defendants are entitled to the granting of their motions for summary judgment.

"It Is Therefore, Ordered That the motions of all defendants for a summary judgment be and they are hereby granted.

"It Is Further Ordered That the complaint and the cross-complaint in the above entitled and numbered cause be and they are hereby dismissed with prejudice, to all of which plaintiff objects and excepts.

"It Is Further Ordered That defendants be and they are hereby granted judgments against the said plaintiff for costs to be taxed by the Clerk of the Court."

We have carefully reviewed a rather extensive record, so it seems, as viewed in the light of the fact that the cause was determined on a motion for summary judgment. We are compelled to conclude that the trial court correctly appraised the pleadings, depositions and affidavits on file in the case by holding they left for trial no material issue of fact for litigation.

This being so,      the case was ripe for summary judgment and it would have been an injustice to all parties to the action to impose upon them the expense of a long and tedious trial. If the obviously bulky transcript before us was necessary merely to ascertain the fact whether there was an issue for trial, it might be fairly assumed the trial of the issue actually found to exist would have required a record twice or thrice the size of the one before us for disposition of this appeal.

It is not in dispute under the pleadings that plaintiff held the truck in question under a note secured by mortgage for balance of the purchase price. It is an admitted fact that under terms of the mortgage the truck could be repossessed for default in payment of the installments of purchase price due monthly. We quote a proviso from the mortgage. It reads:

"1. Mortgagor agrees that if default shall be made in the payment, of the installments aforesaid * * * all of the unpaid installments of this mortgage and the note shall, *without notice,* become due and payable." (Emphasis added.)

Neither is it open to dispute, under the pleadings and depositions, that plaintiff was in default as to the payment of three installments when the fire occurred which badly damaged plaintiff's truck. Remembering, then, that by plaintiff's consent, the damaged truck was in possession of Mc-Callister Auto Company for repairs following the fire, note this testimony in a deposition by plaintiff himself. He testified:

"Q. Did you ever go to McCallister Auto Company and ask for possession of the truck? A. No.

"Q. Did you receive letters from Securities Acceptance Corporation to the effect that you were delinquent on your payments? A. Yes, I did.

"Q. Did you receive a letter to the effect that if you did not pay up your delinquent payments the truck would be repossessed and sold in accordance with the mortgage on it? A. Yes.

"Q. Did you ever contact McCallister Auto Company and ask them to give you the truck? A. No."

Again, from the same witness, the plaintiff:

"Q. You knew that the repairs had been estimated and that the insurance company was willing to pay for the repairs? A. I read the letter saying that they were going ahead and repair the truck.

"Q. So you knew those facts from the letter? A. Yes.

"Q. You knew that the obligation on the note and mortgage was your obligation? A. Yes.

"Q. And you made no effort to keep up the payments? A. I talked to Mr. Burchard.

"Q. Did you talk to anyone at Securities Acceptance? A. No, I didn't.

"Q. Did you talk to Mr. McCallister about it? A. No.

"Q. Were you able to make the payments on the mortgage? A. No.

"Q. You didn't have the money? A. Didn't have the money.

"Q. Did you go to either Securities Acceptance or McCallister and attempt to re-finance the contract? A. No, I didn't."

While there seems to be some disagreement between the parties as to the facts, there can be no confusion or disagreement over the fact that the plaintiff was almost

continuously in arrears on the payment of the installments called for by his contract of purchase; and, further, that the last payment made by him was in June, 1952, shortly before the fire. Numerous letters of demand and calls upon him, either in person or by telephone, were made. Securities Acceptance Corporation, one of the defendants, wrote him by letter of July 26, 1952, demanding payment of the June and July installments and on July 30, 1952, followed with a second demand letter, giving the status of his account as it stood at that time.

Finally, a third letter, under date of August 20, 1952, from Securities Acceptance Corporation notified him that he had until August 30, 1952, to bring the account current or it would be liquidated according to the terms of the chattel mortgage. So it was that the truck was repossessed by Securities Acceptance Corporation for admitted defaults and left with McCallister Auto Company for repairs. Practically the only theory upon which the plaintiff relies for a showing of conversion is that, with the truck thus lawfully in possession of McCallister Auto Company for repairs, as aforesaid, it was wrongfully forfeited for the admitted defaults mentioned and purchased by McCallister Auto Company in satisfaction of the unpaid installments.

Where, then, under the facts, is the material issue of fact relied upon to show error in denying the motion for summary judgment? It arises on a claim by plaintiff that in a letter to him bearing date August 20, 1952, by Securities Acceptance Corporation, the defendant then holding the paper on his car, he was given until August 30, 1952, ten days later, within which to take up the delinquencies on it; that on that date his mother, acting as his agent, called up the office of the Acceptance Securities Corporation to inquire the status of her son's account, having on hand cash in excess of any amount necessary to pay off his indebtedness and was told everything had already been taken care of, and "not to worry."

Let us analyze the decisive issue said to arise on the facts just mentioned and see if the trial court correctly appraised their significance. First, a comment on the extension of time relied on in the letter of Securities Acceptance Corporation. Counsel for defendant say the supposed extension deduced by plaintiff was wholly without consideration and without effect to save the truck from the forfeiture and sale invoked. The trial court, we think, correctly so concluded, although for another good and sufficient reason. Even if the supposed extension claimed was authorized, the condition it imposed was never complied with.

The only pretense of payment on or before the date mentioned was the appearance on the scene on the very last day of grace claimed, August 30, 1952, of plaintiff's mother and her telephone conversa-

tion with one "Martin" then in the office of Securities Acceptance Corporation, so the mother claimed. She testified, she was prepared at that time to pay for her son and so informed Martin but was told everything had already been taken care of. To employ her exact language, we quote from the transcript:

"A. No, he told me it was paid and I didn't have to worry about it. He said, 'Mr. McCallister paid everything and all paid', and I said, 'Well, I am here to pay for Rudy.'

"Q. You didn't go over there then?

"A. No, I had the money with me and it was, when he said I didn't need to bother anymore, everything was paid, so I didn't go over there."

Asked where she got the money which she claimed to have with her, she replied her son in Venezuela had sent her $1,000 of it and the other $200, she and her husband had in the home.

The voice in the office of Securities Acceptance Corporation was identified by her as that of a Mr. Martin, killed in an automobile accident in the meantime and, of course, no longer available. The court made no attempt to pass upon the credibility of this testimony but, assuming its verity, concluded it had no bearing on the rights of the parties, since no agency or authorization of any kind by the son for his mother so to intervene in his behalf was shown. As a matter of fact, the record discloses he knew nothing of his mother's act at the time, never relied upon it and did not learn of it for a considerable time later.

We think the trial court properly disregarded this testimony as having no bearing on the rights of the parties. That left the matter in this situation, that plaintiff was badly in default in the payments on his truck, had ignored repeated warnings to make up his delinquencies, thus giving Securities Acceptance Corporation every right to stand upon the acceleration clause in its mortgage, declare the entire balance due and put up the motor truck for sale to satisfy such balance. See, Knoebel v. Chief Pontiac, Inc., 61 N.M. 53, 294 P.2d 625.

The Knoebel case not only upholds the right under the mortgage to accelerate maturity of the unpaid purchase price and sell for delinquencies but at the same time upholds the claim of defendants that there was no consideration for the extension of time of payment to August 30, 1952, no element of estoppel appearing. But, even if it was authorized, the trial court correctly ruled there was no authorized offer to pay within the time limited.

We find no error. The judgment will be affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and KIKER, JJ., concur.