417 P.2d 40

Thomas S. MAINE, Plaintiff-Appellee,

v.

William D. GARVIN, Defendant-Appellant.

No. 7743.

Supreme Court of New Mexico.

July 18, 1966.

Benjamin F. Sherman, Deming, for appellant.

Schaber & Arthur, Deming, LaFel E. Oman, Las Cruces, for appellee.

## OPINION

MOISE, Justice.

Plaintiff-appellee filed this action against defendant-appellant to recover a commission of $6,250.00 which arose by virtue of employment of plaintiff as a real estate broker to sell the Butterfield Stage Motel located in Deming, New Mexico, and

owned by defendant, for which the defendant agreed to pay plaintiff a real estate commission of 5% of the sale price of the property.

Defendant, by his answer, admitted the employment of plaintiff as alleged by him, but denied plaintiff's further allegations that through plaintiff's efforts the defendant had sold the property for $125,000.00, whereby the commission sued for became due. Defendant asserted additional defenses that the complaint failed to state a cause of action; that no sale had been made, but rather a trade for a farm near Artesia, New Mexico, which resulted from fraudulent representations by plaintiff of the value and saleability of the farm.

By cross-complaint, defendant sought damages from plaintiff for false and fraudulent representations allegedly made by plaintiff while serving in a fiduciary capacity as defendant's agent in connection with the trade of defendant's motel for the farm near Artesia. All allegations of misconduct were denied by plaintiff.

A trial was had to a jury resulting in a verdict in favor of plaintiff for $5,250.00. Certain motions were filed by defendant and overruled, following which judgment in favor of plaintiff was entered on the verdict, and defendant appeals.

We set forth the pertinent facts as briefly as possible. Defendant, an experienced farmer, was the owner of the motel in Deming, but desired to sell it. In July, 1962, he listed it for sale with plaintiff. This listing expired. Thereafter, in November, a Mr. Parnell of Artesia contacted defendant concerning a deal for the motel and defendant priced it at $105,-000.00 for cash. Upon learning that Mr. Parnell owned a farm and might possibly be interested in trading, defendant advised him that on a trade, the price for the motel would be $125,000.00. Defendant contacted plaintiff, told him of Mr. Parnell's interest and requested plaintiff's assistance in effecting a deal. This was about November 19, 1962, at which time defendant signed a new listing agreement with plaintiff, wherein a price of "$105,-00 cash" was set forth and the following language appears:

> "In consideration of your acceptance of the terms of this agreement, I hereby give you, for 90 days * * * the agency for sale of my property described above, and agree to pay you a commission of five percent of the price obtained if the property is sold by you * * * upon the terms above or upon any other terms which I may accept. * * *"

Omitting the details of the negotiations which followed, suffice it to say that plaintiff undertook to assist in the transaction, traveled to Artesia with defendant and an employee of plaintiff, made some inquiries concerning value of the farm, which information was transmitted to defendant, and performed some other services in con-

nection with the transaction. On December 11, 1962, after defendant had looked over the property and had inquired as to values of farm land in the Artesia area, a contract for exchange of the motel for the farm was signed by the parties. The deal was completed but, shortly thereafter, defendant sold the farm to a Mr. Hudson for $82,000.00, or for $51,000.00 less than he alleges plaintiff falsely and fraudulently represented the farm to be worth, which amount he claims he lost and seeks to recover in his cross-complaint. Aside from the allegations of misrepresentation of value, defendant also complained that plaintiff falsely had represented that a purchaser for the farm property, at a price of $125,000.00, was at hand. A copy of the listing agreement was not attached to the complaint, and defendant's first point relied on for reversal asserts error in admitting the agreement into evidence over his objection.

Also, defendant asserts that the court erred in allowing parol evidence to vary a written agreement; in not sustaining a motion for a directed verdict at the close of plaintiff's case for failure to prove the amount of commission due as a result of a trade; and, for errors in certain instructions given by the court to the jury.

■ As already noted, objection was made to the introduction of the written agreement, which objection was overruled. Defendant's first point claims error in the ruling. Although defendant asserts that plaintiff made no motion to be permitted to amend by attaching the writing to his complaint, the record does disclose a motion to amend the complaint "to comply with all the proof, and to plead the written contract." In our view of this point, Kleeman v. Fogerson, 74 N.M. 688, 397 P.2d 716, supplies a complete answer adverse to defendant. We there had under consideration the proper application of Rule 9(k) (§ 21-1-1(9) (k), N.M.S.A.1953) when considered in relation to Rule 15(b) (§ 21-1-1(15) (b), N.M.S.A.1953). Everything considered, under the rules announced in Kleeman v. Fogerson, supra, there was no reversible error in the court's ruling. Additionally, we take note of the admission by defendant that he had agreed to pay plaintiff 5% of the sale price of the property in the event of the sale by plaintiff of the property. The only remaining question would be one of whether the contract as alleged and proved had been performed.

■ This is generally the thrust of defendant's second point wherein error is claimed through allowing introduction of evidence to vary the terms of a written instrument. Although the argument is specifically directed at the actual written listing contract introduced into evidence over defendant's objection, the contention is generally to the effect that a trade or exchange is not a sale.

We must determine if an "exchange" is within the terms of plaintiff's employment agreement to "sell" and to be paid a commission of "5% of the sale price," or if parol evidence is admissible to explain the language used in the agreement or in the actual writing.

Defendant cites a number of cases holding that "sale" in a commission contract does not contemplate an "exchange," and that such words are not ambiguous so as to permit parol evidence to explain them. This is the general effect of McFadden v. Pyne, 46 Colo. 319, 104 P. 491. However, none of the other cases cited by defendant can be considered as authority to support the rule. On the other hand, we note our decision in Taylor v. Unger, 65 N.M. 3, 330 P.2d 965, from which we quote the following which would appear to clearly align this court in support of a rule contra to McFadden v. Pyne, supra:

"* * * The written agreement itself provided for the payment of a commission on any acceptable selling price. The offer and acceptance of a lower price did not change the terms or conditions of the written agreement. Possibly, if the agreement had been silent as to payment of a commission on a lesser price and on different terms, a different holding would be warranted but we need not discuss the question at length. We merely mention the fact that some courts in construing similar statutes, hold that when a note or memorandum is sufficient to show authority in the agent to act as to a definite piece of property, other terms, such as an agreement to pay a commission or even the amount, may be shown by parol, Moore v. Borgfeldt, 96 Cal.App. 306, 273 P. 1114, while others hold that where subsequent terms are agreed upon, such changes must also be reduced to writing, so long as the contract remains executory. Cobb v. Warren, 64 Mont. 10, 208 P. 928; Bateman v. Richard, 105 Okl. 272, 232 P. 443; McFadden v. Pyne, 46 Colo. 319, 104 P. 491."

In addition, we would note cases supporting plaintiff's position and contrary to McFadden v. Pyne, supra. Moore v. Borgfeldt, 96 Cal.App. 306, 273 P. 1114; Blackburn v. Bozo, 82 Utah 556, 26 P.2d 542; Jones v. Hollander, 130 A. 451, 3 N.J.Misc. 973; McKinney v. City of Abilene (Tex.Civ.App.1952) 250 S.W.2d 924; Nichols v. Pendley (Mo.App.1960) 331 S.W.2d 673; Hammons v. English, 129 Or. 511, 277 P. 823.

We want no misunderstanding concerning the rules governing the admissibility of parol evidence in connection with written listing agreements. We consider the parol evidence rule to be fully applicable together with all the exceptions recognized in connection with any other writing. Parol evidence may not be received when its purpose and effect is to contra-

dict, vary, modify, or add to a written agreement, but is generally admissible to supply terms not in the written contract, to explain ambiguities in the written agreement, or to show fraud, misrepresentations, or mistake. See Harp v. Gourley, 68 N.M. 162, 359 P.2d 942; note 38 A.L.R.2d 542. We see no error in the court's ruling that the parol evidence was admissible.

Defendant argues that since plaintiff had not succeeded in selling the motel, defendant employed plaintiff as his agent to determine the value and saleability of the Artesia farm with the understanding that if defendant made a deal whereby he acquired the farm plaintiff was to be given a listing on the farm and a commission if and when he sold it. It is clear that defendant's position was fully presented to the jury together with that of plaintiff, and it is evident that the jury believed plaintiff's version. We find no reversible error in the court's ruling on the admissibility of evidence.

Defendant next complains that the court erred in overruling his motion for a directed verdict at the close of plaintiff's case because of a failure of proof as to the amount of commission to which plaintiff was entitled in view of an exchange instead of a sale. It is defendant's position that the statement, "Price—$105,000.00 cash" provides no basis for computing a commission in the event of exchange. Reliance is placed on the language in 12 C.J.S. Brokers § 79 c, p. 174, as follows:

"In estimating the commission on an exchange of real estate the actual and not the trade value of the property received in exchange should be taken as the basis, unless the contract of employment provides for some other basis, such as a fixed and agreed valuation of the property given in exchange."

It is asserted that there is no evidence to establish the actual value of the farm received in exchange as being $105,000.00. We have no quarrel with the general rule as stated in the quotation above. Our difficulty arises in the application defendant would have us make of it. The facts here disclose an even trade by defendant of property on which he placed a $105,000.00 cash value, or $125,000.00 trade value, for 134 acres of land on which the owner placed a value of $1,000.00 per acre, or a total of $134,000.00. We assume this figure was a "trade" value as distinguished from a cash value. The evidence of defendant in this regard should be sufficient to establish the value of the property received in exchange. This is true even though defendant argues that he was misled as to the true value and this is the basis for his counterclaim. The fact remains that he placed an actual cash value on his motel, and agreed to and completed an even exchange for a farm. We fail to see wherein more proof on the part of plaintiff was needed to establish a value on the farm received in trade. First National Bank in Dallas v.

Smith (Tex.Civ.App.1940) 141 S.W.2d 735. There was nothing to prevent defendant from attempting to show that the actual value of the farm was less than $105,000.-00, Reel v. Oravetz, 279 Pa. 147, 123 A. 679, and, as a matter of fact, much evidence was introduced by him to this effect, but to no avail with the jury. We see nothing contrary to our conclusion in Van Leeuwen v. Huffaker, 78 Utah 521, 5 P.2d 714; Scott v. Wood (Tex.Civ.App.1940) 145 S.W.2d 260; or in Story v. Conn (Tex.Civ.App. 1930) 27 S.W.2d 909.

■ In his fourth point defendant complains that the court erred in a number of instructions given by it, and in its failure to adopt certain instructions requested by defendant. As we understand the defendant's arguments, his principal complaint arises out of the fact that the court instructed the jury that defendant, in order to have a valid defense on the grounds of fraud, or to prevail on his counterclaim on the same grounds, must have acted as a reasonable man in relying on representations of plaintiff, whereas, defendant contends that since the relationship between them was fiduciary in its nature, defendant had an absolute right to rely on statements of fact made by his agent, and the only question to be determined was whether or not he did in fact rely thereon.

Instructions 12 and 15, as given by the court, were as follows:

"12. You are further instructed that the law in connection with false representations is that a false representation is not actionable and does not form the basis of action, if made under such circumstances, and in relation to the subject matter, that a person of the character and diligence of the defendant Garvin would not ordinarily be deceived thereby. In other words, if you make false representations about a piece of property or land that a man was looking at, when he was standing right on the land and could see for himself, that would not constitute fraud; because it would be negligence for a person to be deceived by a representation which he could see with his own eyes that something else was a fact. In an action for relief on the ground of fraud, the question is whether the representations were of such a character and made under such circumstances that they were reasonably calculated to deceive the defendant and the diligence and prudence required by the defendant is such as may reasonably be expected of a person of the intelligence and character and business experience of the defendant, William Garvin. In order to determine whether or not the defendant did use in this case the diligence and prudence that he should have used, you may take into consideration his intelligence, his age, and his experience, especially his experience with regard to farming, the value of farm land,

and his experience in real estate transactions.

"15. You are instructed that every false affirmation does not amount to a fraud. If by an ordinary degree of caution and investigation, the defendant, William D. Garvin, could have ascertained the falsity of the representations complained of, then the defendant, William D. Garvin, is not entitled to a verdict; and in this case, to entitle defendant William D. Garvin to a verdict, you must believe from the evidence, not only that the representations complained of were made, but also that they were made under circumstances calculated to deceive a person acting with reasonable and ordinary prudence and caution; and in determining this question the jury should consider all the circumstances under which the alleged representations appear from the evidence to have been made, and further under the circumstances, whether the representations were such as a person of common and ordinary prudence would or should have relied upon, or as would be likely to mislead such a person."

Unquestionably, these instructions advised the jury that defendant was entitled to rely on advice and information given him by plaintiff only if a reasonable person would do so, in the light of all the facts and circumstances present. In so instructing, the court clearly fell into error.

The rule applicable in determining the right of an agent to recover compensation from his principal differs from that which is applied when fraud is claimed as between a vendor and purchaser, as in Berrendo Irr. F. Co. v. Jacobs, 23 N.M. 290, 168 P. 483; Bell v. Lammon, 51 N.M. 113, 179 P.2d 757; Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071. See also, Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134. The difference between the situation present in these cases and that being considered by us was recognized by this court in Canfield v. With, 35 N.M. 420, 299 P. 351, a case in which a real estate agent was attempting to collect a commission from his principal, and in which the principal claimed the value of property taken in trade was materially less than the agent represented it to be. We there said:

"* * * It may be that in a controversy between the owner of real estate engaging in writing to exchange the same, at stipulated prices, the expression of opinion as to value of the respective properties would not be considered as a statement of a fact, and, if the parties are on an equal footing and have equal opportunities and facilities for obtaining information as to value, expressions of value would be considered as dealers' talk merely, and as not sufficient, even if not true, to void a contract between such parties. They have dealt more or less.

at arm's length, but the rule applicable to real estate brokers is more strict.

" 'The broker occupies a fiduciary relation to the owner he represents in the sale of the property, owes full fidelity in the service he undertakes, and upon his faithfulness depends his right to compensation.' "

There follow a number of quotations of the applicable rule taken from texts and cases in other jurisdiction. Of these, Wiruth v. Lashmett, 82 Neb. 375, 117 N.W. 887, and Pratt v. Allegan Circuit Judge, 177 Mich. 558, 143 N.W. 890, are particularly persuasive. See also, Security State Bank of Pearsall v. Burton (Tex.Civ.App.1928) 10 S.W.2d 201, and Wright v. Bennett, 150 Ark. 154, 233 S.W. 1089. For a present-day statement of the rule, see 2 Restatement, Agency, § 469. In our recent decision in Iriart v. Johnson, 75 N.M. 745, 411 P.2d 226, we recognized the relationship between a broker and his principal as being one of "great trust and confidence," and that the broker must "exercise the utmost good faith toward his principal throughout the entire transaction." From all the foregoing, we are clear that the instructions as framed did not properly explain defendant's rights in the premises.

We do not overlook the fact that the court gave instructions 20 and 21, both requested by defendant, as follows:

"20. You are instructed that the principal has a right to believe that the broker is acting for his best interests. The principal is not required to rely on his own judgment when he has employed a broker instead in order to ascertain information and that he might have the benefit of the broker's judgment.

"21. You are instructed that a real estate broker occupies a fiduciary relation to the owner or principal he represents in a sale of property and owes full fidelity in the service he undertakes. The law requires the broker to act with the utmost good faith toward his principal, and he is under a legal obligation to disclose to his principal all facts within his knowledge which are or may be material to the matter in which he is employed or which might influence the action of his principal in relation thereto."

We agree with defendant that the giving of these instructions could not overcome the errors in instructions 12 and 15. As a matter of fact, they are, in effect, in conflict. Under such circumstances, we cannot say defendant was not prejudiced. Compare Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706; Pape v. Ingram, 69 N.M. 32, 363 P.2d 1029.

Plaintiff, to avoid the effect of the error, argues that no proper instruction was submitted, and no proper objection made to the instructions given. An examination, both of defendant's requested instructions and his objections to those given, satisfies us

that the trial court was sufficiently alerted to the issue being asserted, under the rule as explained in Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798.

We do not consider it necessary, in the light of the foregoing, to discuss other defects claimed to be present in the instructions.

The cause is reversed and remanded, with instructions to grant a new trial, and proceed in a manner not inconsistent herewith.

It is so ordered.

CARMODY, C. J., and COMPTON, J., concur.