435 P.2d 205

Doctor Elma Lucille ZOBEL, Plaintiff-
Appellant,

v.

DALE BELLAMAH LAND COMPANY, Inc.,
a New Mexico Corporation, Defend-
ant-Appellee.

No. 8433.

Supreme Court of New Mexico.

Dec. 18, 1967.

Stephenson, Campbell & Olmsted, Harry S. Connelly, Jr., Santa Fe, for plaintiff-appellant.

Shaffer, Butt & Bass, Albuquerque, for defendant-appellee.

## OPINION

MOISE, Justice.

Plaintiff-appellant brought suit to recover $6,527.92 claimed to be due from defendant for the year ending December 15, 1965 on account of a written option agreement.

The contract was dated December 15, 1964 and was between plaintiff and certain trustees on the one hand, and defendant on the other. By the terms of the agreement, plaintiff and the trustees agreed to sell, and defendant to purchase, a piece of property described as Tract A and plaintiff granted defendant an option on property described as Tract B.

Article I contains "Miscellaneous" provisions applicable to the entire agreement. Section 3 therein reads as follows:

"Each covenant, promise and undertaking granted and obligation assumed by a party to this Agreement is supported by the consideration of each covenant, promise and undertaking granted and obligation assumed by every other party to and pursuant to this Agreement: provided, however, that Trustees assume no obligations stated in Article III hereof."

In Article II, Section 8, "Conditions Subsequent" applicable to the contract for purchase and sale of Tract A are set forth, and in Section 10 "Payment, Guarantee and Distribution of Price" applicable to the Tract A sale are itemized.

Article III of the agreement is an option agreement covering a tract of land described as Tract B. The option is set forth in sections numbered 16 to 25, inclusive, and is between plaintiff as grantor and defendant as grantee.

This litigation arose out of the option agreement (Part III), two sections of which are pertinent in arriving at a decision. They read:

"*Section 16. Option to Purchase; Price, Consideration; Termination.*

"(a) At the price of $217,597.50 Zobel hereby confers upon and grants to the

Company the right and option to purchase Tract B in the manner provided in Article III hereof.

"(b) Consideration for said right and option to purchase Tract B is to be annual payment of the sum of $6,527.92 by the Company to the Bank for the account of Zobel on or before the 15th day of December of each year, commencing with the year 1965, until said right and option terminates.

"(c) Said right and option to purchase Tract B shall terminate on December 15, 1969 or at such earlier date as any one of the following events occurs:

(1) Failure without waiver of any condition subsequent stated in Section 8 hereof (being conditions subsequent in the purchase agreement of Tract A).

(2) Failure to pay any amount specified in Section 10 hereof on or before the date the same is due and payable (dealing with payments, guarantee and distribution of price on Tract A).

(3) Failure to pay any amount specified in Paragraph (b) of this Section 16 by the appropriate date."

*"Section 18. Exercise of Option.*

"At any time before said right and option to purchase Tract B conferred and granted by Section 16 hereof is terminated, as provided in said Section, the Company may exercise the same in the following manner:

"(a) By delivering to Zobel a written, executed and acknowledged notice signifying the Company's election to purchase Tract B hereunder, and

"(b) By delivery to the Bank of a copy of said written notice, and

"(c) By payment to the Bank for the account of Zobel of sums as follows:

(1) The sum specified in Subsection 16(b) hereof for the year in which said right and option is so exercised if the same has not been earlier paid by the Company, and

(2) The sum of $10,000.00."

After issue was joined between the parties, both plaintiff and defendant moved for judgment on the pleadings on the theory that the contract was unambiguous and required judgment in their favor. The court overruled plaintiff's motion, but determined that the agreement was clear and unambiguous, and that defendant's motion should be granted. Thereupon, plaintiff took the position that ambiguities were present and, in support of the claim that the money sued for was due, tendered witnesses to testify concerning the intention of the parties which the contract had been drawn to effectuate. The tender was refused by the court.

We are here called upon to determine if the language set forth above is clear and unambiguous and, if it is, whether it supports the court's judgment that defendant was not liable on December 15, 1965 for $6,527.92, as consideration for the option for the year ending on that date.

That the parties intended to enter into an option agreement with the terms as stated in Article III is unquestioned. In Hofmann v. McCanlies, 76 N.M. 218, 220, 413 P.2d 697, 698 (1966), we defined an option in the following manner:

"An option is a contract whereby one party agrees to keep an offer open for a stated time upon specified terms and conditions, and may become a contract binding upon both parties, depending on whether the optionee exercises his right."

For other definitions, see 1 Williston, Contracts (3rd Ed. 1957), § 61A; 8A Thompson, Real Property (1963 Repl.) § 4443.

Both parties state there was a contract, but disagree concerning the consideration which admittedly must be present. See Knoebel v. Chief Pontiac, Inc., 61 N.M. 53, 294 P.2d 625 (1956). Plaintiff maintains simply that Section 16(b) says that the consideration "is to be annual payment of the

**588**

sum of $6,527.92 * * * on or before the 15th day of December of each year, commencing with the year 1965, until said right and option terminates." In other words, it is plaintiff's position that she granted an option from December 15, 1964 to December 15, 1965 for $6,527.92 to be paid at the end of the year, and similarly for successive years, until December 15, 1969, if not sooner terminated as provided in Section 16(c).

On the other hand, defendant contends that the consideration supporting the first year of the option was the agreement to purchase Tract A contained in Article II, and that nothing was due on December 15, 1965, if the option was not to be continued for the next year.

The difficulty that arises results from the failure to state in Section 16 that defendant bound himself to pay the amount therein specified, or to provide with certainty that the December 15 payment in each year was to cover the option for the preceding year. Also, what was the intention of the parties when they stated in Article I, Section 3, that every covenant of either party furnished consideration for every covenant of the other party, and how would the obligation to pay the consideration provided in Section 16(b) have been effected during any year when a breach of the purchase contract on Tract A occurred, and the option terminated under the provisions of Section 16(c) (1) or (2)?

In our view, these questions and uncertainties were unfortunate and, unquestionably, resulted in ambiguity. The trial court should have allowed plaintiff to introduce the proof tendered by it, not for the purpose of varying the terms of an unambiguous agreement, which is not permitted, Maine v. Garvin, 76 N.M. 546, 417 P.2d 40 (1965), but to aid the court in arriving at the meaning intended by the parties in the ambiguous contract signed by them. Harp v. Gourley, 68 N.M. 162, 359 P.2d 942 (1961). Compare Woodson v. Lee, 73 N.M. 425, 389 P.2d 196 (1964).

Also, we call attention to Article III, Section 18(c) (1), quoted above, providing that upon exercising the option, the sum of $6,527.92 must have been paid for the option in the year in which it is exercised. Did this include the year 1965? If during that year defendant had sought to exercise its option, the answer is obvious. However, it is unclear where, as here, there had been no attempt to purchase as therein provided. The uncertainties of the other provisions were in no sense clarified by this section but, to the contrary, additional ambiguous elements were thereby introduced.

It follows from what has been said that the judgment appealed from should be reversed, and the cause remanded with instructions to reinstate it on the docket and to then proceed in a manner consistent herewith.

It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.