Argued January 26, affirmed February 24, 1972

DONALDSON ᴇᴛ ᴜx, *Respondents, v.* WHITE ᴇᴛ ᴜx, *Appellants.*

493 P2d 1380

*Lewis B. Hampton,* Beaverton, argued the cause for appellants. With him on the briefs were Myatt, Bolliger, Hampton & Freerksen, Beaverton.

*Gerald R. Pullen,* Portland, argued the cause for respondents. With him on the brief was Bruce D. Kayser, Portland.

HOLMAN, J.

Defendants built a house on a lot which is subject to a restrictive covenant against the construction thereon of a house of more than one and one-half stories. The obvious purpose of the covenant was to protect the view from an adjacent dominant uphill lot occupied by plaintiffs' home. Plaintiffs brought this action for damages, claiming defendants breached the restrictive covenant by building a house of more than one and one-half stories, thereby destroying plaintiffs' view. Defendants appeal from a judgment for plaintiffs entered pursuant to a jury verdict.

The sole issue on appeal is whether there was properly admissible evidence sufficient to sustain plaintiffs' judgment. Lest the members of the Bar waste their time reading this opinion, we caution that this decision, as well as most decisions on the sufficiency of the evidence, is of no importance to the law of this state and that it is being written solely for the edification of the litigants and their lawyers.

Defendants contend first that there was no evidence from which the jury could find that their house exceeded one and one-half stories. Defendants' house lay generally lengthwise across plaintiffs' view. At its center, the house is substantially 28 feet in width. The front exterior wall of the center part of the house is

approximately 14 feet high. The roof slopes upward from the top of this wall at an extremely steep 9 to 12 pitch, that is, nine vertical inches for every horizontal foot. After gaining about eight feet in elevation in just eleven horizontal feet, the roof then peaks and thereafter extends downward at a 4¼ to 12 pitch for an additional horizontal distance of 14 feet. There it intersects a dormer wall approximately seventeen feet above the main floor. The described roof does not extend the full length of the house.

A second story was imposed at a height of nine feet above the floor of the main level except for that area comprising the entrance hall. Thus, additional living area, 21 feet in width and 7 feet 6 inches in height, was superimposed upon a lower story only 28 feet in width.

On the second floor are two bedrooms, each 12 feet by 13 feet, a third bedroom, 15 feet 9 inches by 14 feet 6 inches, two full bathrooms, and a hallway which is used partly as a balcony overlooking the entrance hall. The main story has seven rooms plus a utility room, a dressing room, a hall, and two bathrooms.

Under the house there is a partial basement, one end of which opens out at grade level. A dispute arose among the witnesses concerning how much of the partial basement was below grade. Plaintiffs' expert testified 50 per cent was below grade, whereas defendants' expert testified about 75 percent was below grade.

Defendants' expert, in testifying that the second level above the basement was a half story, defined a half story as a second-floor living space, the entire

area of which is above the bottom of the roof slope. Plaintiffs' expert claimed, to the contrary, that any second-floor living space comprises a full story whether or not it is within the confines of the roof slope. Moreover, he described the house as being two and one-half stories in height since the basement, being 50 per cent above grade, was considered to be a half story.

■ It is our opinion that there was sufficient evidence from which the jury could find that the house was more than one and one-half stories regardless of which expert is followed. Even if the definition of defendants' expert is accepted, the described roof and wall construction of the house would permit a jury to find that the defendants were guilty of constructional subterfuge, in that they did not bring the second story entirely within the confines of the roof's slope and thus did not comply with their definition of a one and one-half story house.

■ Defendants' second contention is that there was insufficient competent evidence of plaintiffs' damages. There was conflicting testimony that the house was both 31 and 33 feet in height from the basement floor. Plaintiffs' expert on valuation testified that damage to plaintiffs' view, in terms of diminishing the value of plaintiffs' house, began when defendants' house reached a height of 28 feet above the level of the basement floor, with the bulk of the damage occurring as the result of its extension above the 30-foot level. Defendants contend that there is no evidence from which the jury could find that the height of defendants' house would have been less than 28 feet from the basement level had the house consisted of only a story and a half. Defendants therefore claim it

was error to admit plaintiffs' evidence of damage and that, had such evidence been excluded, there would have been insufficient evidence of damages to go to the jury.

We conclude, however, that since there was evidence from which the jury could find that the daylight basement constituted a half story, it could likewise find that the house already comprised a story and a half upon completion of the main story. There also was evidence from which the jury could find that the basement was substantially eight feet in height and the main story was nine feet in height. A roof reasonably pitched and superimposed upon a main story which was 28 feet in width would not have peaked at 28 feet above the basement floor. There was testimony that most roofs are built at a 4 to 12 or 5 to 12 pitch. A 5 to 12 pitched roof on both slopes on a house 28 feet in width would peak at about six feet above the ceiling joists. This would result in an over-all height of 25 feet or less from the basement level to the roof's peak.

Even if the definition of defendants' expert of a half story being a second-floor living space entirely within the confines of the roof's slope is adopted, the jury could find that, in the center portion of the house, the lower five feet of the second-story living level was not within the confines of the roof's slope. If this five feet were deducted from the 33-foot height of defendants' house, 28 feet would remain. It is our opinion that out of the welter of confusing, contradictory testimony came a sufficient basis for the jury to find that, if defendants' house had been only a story and a half in height with a roof of normal pitch, the house would have been less than 28 feet in height. Hence, plaintiffs'

evidence of damages was properly admitted and there was sufficient evidence to sustain the verdict.

The judgment of the trial court is affirmed.

McALLISTER, J., concurs in the result.