ALLOWAY et ux, *Respondents,*

*v.*

MOYER, *Appellant.*

550 P2d 1379

*R. Conrad Schultz,* of Hill & Schultz, P.C., Eugene, argued the cause and filed briefs for appellant.

*J. Fred Brandenfels,* of Brandenfels & Klarr, Eugene, argued the cause and filed a brief for respondents.

Before O'Connell, Chief Justice,\* and Holman, Tongue, and Bryson, Justices.

HOLMAN, J.

---

\*Chief Justice when the case was argued.

## HOLMAN, J.

This is a suit in equity to restrain defendant from building a house on his lot in contravention of a building restriction as to height or, in the alternative, for damages for violation of the restriction. Defendant appeals from a decree for plaintiffs requiring him to remodel his house to comply with the restriction or to pay damages.

Plaintiffs were the original owners of all the property in question. They platted it and subsequently defendant came into ownership of one of the lots. The property was situated on a hillside to the south of the City of Eugene, defendant's lot being immediately below that of plaintiffs'. When plaintiffs learned that defendant intended to build, they warned him of the restriction, which was as follows:

"All building structures on lots 1, 2, 3 and 4 shall be located with respect to topography and finished grade elevation as not to obstruct the view of other residences or prospective building sites in the immediate area. No structure of the A-frame type may be erected on lots 1 through 4, inclusive."

A number of conferences were held between the parties in which they unsuccessfully attempted to work out their differences concerning the height of the house which defendant was to build. After defendant commenced construction and it appeared to plaintiffs that the house would not, in their opinion, comply with the restriction, they commenced the present proceeding.

Despite the commencement of the suit, defendant continued construction which, at least as to the structure's height, was completed at the time of trial. The trial court entered the following decree:

"1. Defendant shall have three alternatives from which he may choose, to-wit:

"a. Remove the roof on the present structure at 1990 Graham Street, Eugene, Lane County, Oregon, and replace said roof with a flat roof which is not less than 3

feet 6 inches below the present roof line. If Defendant is able to lower the roof said 3 feet 6 inches there shall be no damages to pay to Plaintiffs. In the event that Defendant is able to lower the roof only 3 feet, Defendant shall pay, in addition, damages in the sum of $1,000 to Plaintiffs.

"b. Remove the present roof structure and replace the roof with a mansard roof that shall be not less than 2 feet 9 inches below the present roof line, using a mansard-type roof. In the event that Defendant should choose this alternative, he shall pay to Plaintiffs damages in the sum of $2,000.

"c. Leave the roof as it now is and pay the Plaintiffs the sum of $10,000 as damages.

"IT IS FURTHER ORDERED AND DECREED that if Defendant chooses to lower the roof as set forth in either alternative 'a' or 'b', and there is need for a chimney or other type of venting ordinarily used in constructing a home similar to that existing at 1990 Graham Street, Eugene, Lane County, Oregon, and should said chimney or venting rise above the height indicated in the alternative chosen by the Defendant, Defendant shall be allowed to so construct any such chimney or venting."

■ Defendant first contends the trial court erred in overruling his demurrer to plaintiffs' complaint, which was upon the ground that the complaint was so unclear and ambiguous as not to be enforceable, because there was no sure way of determining whether a house of any given height upon the servient estate would violate the restriction. An ambiguous restriction is not void. This court has construed and upheld restrictions which were as equally ambiguous as is the one in question here. *See Hanson v. Salishan Properties, Inc.,* 267 Or 199, 515 P2d 1325 (1973) (view preserved to the greatest extent reasonably possible); *Donaldson v. White,* 261 Or 314, 493 P2d 1380 (1972) (height restricted to one and one-half stories).

■ An ambiguous restriction requires only a reasonable construction which is most favorable to the servient estate. In this case the restriction was ambiguous and subject to construction. By his purchasing the

servient property with notice of the restriction, defendant bound himself to comply with a reasonable construction of the restriction most favorable to him, taking into consideration the circumstances of its formulation, including the topography and the view which was intended to be protected. V. Powell on Real Property 155, ¶ 673 (Rohan rev 1975) has the following to say:

> "Any set of operative facts claimed to constitute a promise respecting the use of land presents a preliminary and basic set of questions in the field of construction. All of the general rules of construction set forth in a prior chapter of this Treatise (¶¶316-320) are applicable. Thus, an effort is made to gather the intent of the parties from the language used, read in the light of the circumstances of its formulation. Insofar as these promises tend to curtail or to hinder full use of land, the public policy favoring untrammeled land use comes in to urge strict construction wherever ambiguity opens the door for a policy-dictated construction. * * *." (Footnotes omitted.)

■ Defendant illustrates what he claims is the basic irrationality of the restriction by arguing that any house upon his lot would obstruct a view of something and could, therefore, conceivably come within the restriction. Such a construction would be patently unreasonable. Giving the restriction a reasonable construction which is most favorable to defendant's position while taking into consideration the surrounding topography, it is apparent that it was intented to protect the view of the City of Eugene which was in the distance. We so construe it. Defendant's demurrer is not well taken.

■ The principal factual question in the case is whether the roof of defendant's house unreasonably interfered with plaintiffs' view of the City of Eugene. Defendant claims that the trial court erred in finding that it did. One of the things which must be taken into consideration in deciding the reasonableness of defendant's compliance with the restriction is what it was practicable for defendant to do in building a house while still protecting plaintiffs' view of the city. The

[ 401 ]

trial court found that he could have planned and constructed his house without interference with plaintiffs' view of the city, which finding defendant also assigns as error.

Defendant admitted he could have constructed his house considerably lower but his excuse for not doing so was that the additional excavation which such construction requires would have cost "overall probably another $1,500." His expert witness testified that the house could have been built "reasonably three or four feet lower" but it would have cost $3,500 to $4,000 to do so and, therefore, was not practical because, "he would have so much expense that he would have been better off to have a different lot in the first place." Plaintiffs' expert witness testified that defendant's house could have been lowered without an unreasonable amount of additional excavation. Without going into all the evidence on both sides, it is our conclusion, as it was the trial judge's, that defendant could reasonably have complied with the restriction to a greater extent than he did and that by his not so complying plaintiffs' view suffered.

The trial judge inspected the premises and observed the extent to which the view was obliterated, and he was in a particularly good position to determine whether defendant's house could reasonably have been built lower and whether plaintiffs' view was materially impaired. Defendant could reasonably have anticipated that some considerable expense might be required in complying with the restriction placed upon his property.

Defendant next contends the trial court erred in not estopping plaintiffs from enforcing the restriction because plaintiffs had agreed that defendant could construct his house to the height which he did. His testimony indicates, the trial judge found, and defendant substantially admitted (although he subsequently denied it) that he and plaintiffs had agreed that his roof line would be no higher than the line of sight from plaintiffs' living room window to the roof-

top of a house beyond that of defendant's. Defendant claimed that he returned the next day with his builder and an instrument for establishing levels and that, after consultation with and explanations to plaintiffs, it was agreed by plaintiffs that it was permissible for defendant to build a house the roof of which was no higher in elevation than a point about two feet lower than plaintiffs' living room window. This claim was made even though this would have allowed defendant to build about five feet higher than the line of sight agreed to the previous day. The trial judge came to the conclusion that the parties were talking at cross-purposes and did not have a meeting of the minds in the second conversation, and with this we agree. When defendant was asked if he really thought that plaintiffs had, all of a sudden, agreed to a five-foot increase in the height of defendant's house after plaintiffs had been so adamant about it for such a long period of time, defendant said he thought that anyone could be subject to a change of mind.

■ Defendant lastly contends the trial court erred in ruling that plaintiffs would be damaged in the sum of $10,000 if defendant elected not to lower his roof. The evidence of damage was minimal. The only evidence justifying a judgment of $10,000 was plaintiffs' own testimony of depreciation in value. The best evidence, in our opinion, was that supplied by a neighbor, a builder who bought and sold property "all the time," who testified that defendant's roof obliterated about one-third of plaintiffs' view of the city and the impairment of value was substantial. While he could not say exactly how much plaintiffs' property was diminished in value, it was between $3,000 and $5,000. We disagree with the trial judge as to the value of the damage incurred and, as we are trying the case de novo, we set plaintiffs' damages at the sum of $4,000 and give defendant no alternatives insofar as lowering his roof, since we doubt that it is really practical to do so.

The judgment of the trial court is affirmed as modified and the case is remanded for entry of a judgment for plaintiffs in conformance herewith.

Costs to neither party.