654 P.2d 1385

James MIDDLEKAUFF, Ian G. Beswick, Lester R. Updike, Leon Hales and Richard Lee, Plaintiffs-Appellants,

v.

LAKE CASCADE, INC., an Idaho corp.; Intermountain State Bank, an Idaho corp.; Walter E. Heller & Co.; John G. Pierce, Trustee; Bric of America, Inc.; Dean Dishman and Patricia Dishman, husband and wife; and Leonard Mallea and Patricia Mallea, husband and wife, Defendants-Respondents.

No. 13663.

Supreme Court of Idaho.

Dec. 9, 1982.

E. Don Copple, Esq., of Davison, Copple, Copple & Copple, Boise, for plaintiffs-appellants.

Charles F. McDevitt, Boise, Gerald L. Weston, Caldwell, Kenneth L. Mallea, Boise, for defendants-respondents.

DONALDSON, Justice.

The plaintiffs-appellants are owners of real property purchased from Lake Cascade, Inc. and located in the Lake Cascade Subdivision in Valley County, Idaho. The property that is the subject matter of this appeal is situated between the subdivision and Lake Cascade Reservoir and was owned by Lake Cascade, Inc. when the plaintiffs purchased the subdivision property.

The defendant-respondent, Lake Cascade, Inc. is an Idaho Corporation and a wholly owned subsidiary corporation of the defendant-respondent, Bric of America, Inc. The defendants-respondents Walter E. Heller & Co. and John G. Pierce are each the owners of mortgages that encumber the property involved in this dispute and the defendants-respondents, Dean and Patricia Dishman and Leonard and Patricia Mallea, subsequently purchased a portion of the disputed property.

The dispute began after the plaintiffs-appellants purchased the land from Lake Cascade, Inc. The trial court stated it appeared that when the plaintiffs-appellants purchased the property during the late 1960's and early 1970's, Lake Cascade, Inc. orally represented that the property adjacent to their newly purchased property would be "used and would remain as a common area for a boat basin, landing strip and other recreational activities." The property and the facilities were used by the owners of the lots in the subdivision as a common area until 1977.

On January 29, 1973, Bric of America, Inc. and Lake Cascade, Inc. filed a petition for reorganization under Chapter XI of the Federal Bankruptcy Act of 1898. The parties filed the reorganization petition in the United States District Court for the Middle District of Florida.

Later in August of 1973, Leonard and Patricia Mallea made a written offer to Lake Cascade, Inc. to purchase a small parcel of the property in dispute. The Federal District Court authorized the private sale "free and clear of all liens and encumbrances."

In the spring of 1974 the plaintiffs-appellants, as set forth in answers to an interrogatory, became aware of the impending bankruptcy proceedings. Attempting to assert their rights in the property, they filed affidavits in the public records of Valley County. Upon learning of these affidavits, Lake Cascade, Inc. filed a complaint in the Florida Bankruptcy Court requesting that the affidavits claiming an interest in the property be declared null and void. Two of the appellants, Leon Hales and Richard Lee, expunged the affidavits. The other appellants did not file similar releases of any purported rights in the property, but rather, filed an answer and affirmative defense in the Florida Bankruptcy Court. The court found the affidavits to be null and void and ordered the appellants in technical contempt but stated they could purge themselves of that contempt "by filing in the public records where the affidavits were filed, suitable documents indicating that they release any claimed interest under these affidavits . . . ." The court also ordered that "this relief granted to the plaintiff [the defendants-respondents in this action] is without prejudice to any rights the defendants [the plaintiffs-appellants in this action] may have and any remedies they may have against the Plaintiff other than by filing affidavits to effect the title to plaintiff's land . . . ." The appellants took no further action at this time.

In 1976, during the bankruptcy reorganization, Lake Cascade, Inc. conveyed a portion of the property in dispute to Dean and Patricia Dishman. Subsequent to this conveyance the property continued to be used as a common area until the summer of 1977 when the Dishmans fenced the property

that they had acquired from Lake Cascade, Inc. Also, in August 1978, the Malleas denied access to a party seeking to cross the property on his way to the lake.

On February 26, 1979, the plaintiffs-appellants then filed suit in district court alleging that the parcel of land in question had not been kept as a common area as represented and requested that the court enter its judgment declaring that the real property be utilized exclusively for the common use purposes that were enumerated in the complaint. The defendants-respondents answered and asserted a number of affirmative defenses, including the statute of limitations and res judicata.

The district judge concluded that the plaintiffs-appellants' cause of action sounded in fraud and that the purported fraud occurred in 1974 when Lake Cascade, Inc. conveyed a small portion of the land to the Malleas "free and clear of all liens and encumbrances." He also stated that even if the complaint were based upon a breach of contract theory, this breach also took place in 1974. He then dismissed the plaintiffs' complaint on the basis that the action was not filed until 1979, and therefore, the claims were barred by the three-year statute of limitations under I.C. § 5–218(4) and the four-year statute of limitations under I.C. § 5–217.[1] This appeal followed.

The appellants argue that the statute of limitations did not begin running when Lake Cascade Inc. conveyed a small portion of the land to the Malleas in 1974. The trial court determined that this 1974 conveyance put the appellants on notice of a breach of contract or fraudulent conveyance because the Bankruptcy Court authorized a conveyance "free and clear of all liens and encumbrances." We acknowledge that the Bankruptcy Court had the authority to sell this property "free of all liens and encumbrances," *Wright v. Union Central Life Insurance Co.,* 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938), but we hold that an alleged promise respecting the use of land is neither a "lien" nor an "encumbrance."

This alleged promise is neither a lien nor an encumbrance because firstly, a "lien," has consistently been defined as a charge upon the property to secure the payment of a debt. *Sullins v. Sullins,* 65 Wash.2d 283, 396 P.2d 886, 888 (1964); *Matlow v. Matlow,* 89 Ariz. 293, 361 P.2d 648, 651 (1961). It is apparent that the interest claimed by the appellants is not an interest to secure the payment of a debt. Secondly, an "encumbrance" as defined under I.C. § 55–613 includes "taxes, assessments, and all liens upon real property." This definition does not include an alleged restriction on the use of the property. Therefore, the Bankruptcy Court did not authorize the sale free of this alleged interest in the land, and we hold that the trial court erred in finding that the statute of limitations began running in 1974 when the land was conveyed "free of all liens and encumbrances."

Having determined that the statute of limitations did not begin running when the Bankruptcy Court conveyed the land "free of all liens and encumbrances," we remand this case to the district court to establish at trial whether a cause of action exists and if necessary to determine at what point the statute of limitations did begin running. Where, as here, the trial court granted the respondents' motion for summary judgment other pertinent issues have not been resolved so it will be necessary for the court to make findings of fact and conclusions of law regarding (1) whether the plaintiffs-appellants have an interest that is enforceable

1. I.C. § 5–217 reads as follows:

"5–217. ACTION ON ORAL CONTRACT.— Within four (4) years: An action upon a contract, obligation or liability not founded upon an instrument of writing."

I.C. § 5–218 subsection 4 reads in pertinent part:

"5–218. STATUTORY LIABILITIES, TRESPASS, TROVER, REPLEVIN, AND FRAUD.— Within three (3) years:

. . . .

"4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

against the original promisors, Lake Cascade, Inc., and (2) whether that right, if it does exist, is now enforceable against the subsequent purchasers, the Malleas and the Dishmans, and whether it continues to be enforceable against the original promisors. A resolution of these questions will enable the trial court to decide whether a cause of action exists and if so, to then determine when the statute of limitations began running.

In consideration of the first issue we direct the trial court's attention to *Ute Park Summer Home Association v. Maxwell Land Grant Co.,* 77 N.M. 730, 427 P.2d 249 (Ct.App.1967), *aff'd,* 83 N.M. 558, 494 P.2d 971 (1972). This case involved a grantor found by the court to have induced purchasers to buy lots with promises to construct a golf course, clubhouse and tennis courts. The grantor then attempted to sell the golf course area without any provision for its use by the promisee-purchasers. The trial court found that an enforceable right came into existence because of the grantor's representations made when the lots were sold to the plaintiffs.[2]

On appeal to the New Mexico Supreme Court it was argued that the creation of this interest was prohibited by the statute of frauds. The court held that, "to create such rights in the mentioned fashion does not require an instrument in writing signed by the party to be charged." 494 P.2d at 973.

The respondents also argue that the Dishmans and the Malleas are bona fide purchasers. This issue will have to be decided by the trial court when it makes the determination of whether the interest, if it does exist, is enforceable against the Dishmans and the Malleas.

Finally, the respondents argue that even if the trial court erred in determining the running of the statute of limitations, the judgment can be affirmed on the ground that the appellants' action is barred by res judicata. The respondents claim res judicata applies and the appellants can not reassert the same claim to the same property because the Bankruptcy Court already decided in a summary judgment order that the appellants had no interest in the land. The rule has been set forth in *Intermountain Food Equipment Co. v. Waller,* 86 Idaho 94, 383 P.2d 612 (1963) that

> "[i]n an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim, but also as to every matter which might and should have been litigated on the first suit." *Id.* at 98, 383 P.2d at 615 (quoting, *Joyce v. Murphy Land & Irrigation Co.,* 35 Idaho 549, 553, 208 P. 241, 242 (1922)).

As stated, upon learning of the bankruptcy proceeding the appellants filed affidavits in Valley County claiming an interest in the property. The defendants-respondents, acting as plaintiffs in the bankruptcy proceeding, filed a complaint requesting that the affidavits be declared null and void. The plaintiffs-appellants, acting as defendants in this proceeding, responded and the Bankruptcy Court held that the affidavits were null and void and ordered the appellants in technical contempt because they violated the automatic stay. However, he found they could purge themselves of that contempt by filing suitable documents in which they had to release any claimed interest under those affidavits. He then ordered that "this relief granted to the plaintiffs [defendants-respondents in this action] is

---

2. The Court in *Ute Park, supra,* found that a legally enforceable right came into existence by the grantors use of the plat and the representations made by the grantor's agents when selling the lots. We are not directing the trial court to find the plaintiffs have an interest in the land only if (1) representations were made and (2) the plat contained restrictions. *Ute Park* stands for the proposition that under certain circumstances a writing is not required to establish a legally enforceable interest and any number of factors, if found by the trial court to be sufficient, may justify a finding that the plaintiffs have an interest in the land. *See Monaco v. Bennion,* 99 Idaho 529, 585 P.2d 608 (1978) (where this Court held that, along with other evidence, an illustration of a road, although not actually platted, was sufficient to create an easement).

without prejudice to any rights the defendant [the plaintiffs-appellants in this action] may have and any remedies they may have against the plaintiff other than by filing affidavits to effect the title to plaintiff's land . . . ."

Such language is seemingly conclusive that the Bankruptcy Court did not purport to adjudicate that the appellants had no interest in the land, but only that procedurally the affidavits were null and void because they were in violation of the automatic stay that is imposed when the bankruptcy petition is filed. By the language used the court implicitly reserved to the appellants any rights other than by the filing of the affidavits. Therefore, we hold that there has been no previous litigation of the issues raised by the plaintiffs' complaint and the doctrine of res judicata does not apply.

We have carefully considered all other matters urged upon us by both parties but find it unnecessary to further consider any of these contentions. The summary judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

Costs to appellants. No attorney fees on appeal.

BAKES, C.J., BISTLINE and SHEPARD, JJ., and McQUADE, J. Pro Tem., concur.