690 P.2d 333

**Harold E. THOMAS and Phyllis S. Thomas, husband and wife, Plaintiffs-Appellants,**

v.

**James P. CAMPBELL, Don R. Holland, Paul M. Resnick and Cheri D. Resnick, husband and wife, Defendants-Respondents,**

and

**Flying Eagle Resorts, Intervenor-Respondent.**

No. 14862.

Supreme Court of Idaho.

Oct. 18, 1984.

Howard W. Carsman, Boise, for plaintiffs-appellants.

Gregory Fitzmaurice, Grangeville, for defendants-respondents Resnick.

Dwight F. Bickel, Boise, for Campbell, Holland and Flying Eagle Resorts.

BISTLINE, Justice.

Prior to 1979, James Campbell, defendant-respondent herein, was the owner of two parcels of real estate in the Gospel-Hump Wilderness area on the Salmon River in Idaho County. One parcel of approximately 135 acres on the north side of the Salmon River was known as the Shepp Ranch. The other parcel, known as the Polly Bemis property was situate on the south side of the river, and in view of the Shepp Ranch. Campbell operated the Shepp Ranch as a hunting and fishing resort, accommodating approximately 1,000 people per year. The only means of access to the ranch were by boat, horse, foot or small plane.

On June 8, 1979, Campbell entered into a contract of sale with defendant-respondent Paul Resnick for approximately 105 acres of Shepp Ranch, Campbell reserving from the sale approximately thirty acres of Shepp Ranch. Campbell, as owner of the adjacent thirty acres not being sold to Resnick, in the Resnick transaction created and reserved a "scenic easement" against a one-quarter mile long strip of the Resnick tract fronting on the Salmon River, which easement was to be freely assignable. Pertinent terms of the Campbell-Resnick agreement which have relevance to the Campbell-Thomas transaction were that the easement:

shall be in substantial conformance with the terms and provisions of Exhibit E, with no more strict Grantor restrictions being imposed, and the public or governmental use allowed being no more liberal than as set forth in said exhibit. In addition, however, said easement shall specifically provide for the construction of a duplex living unit along the bank of the Main Salmon River in the area so conveyed, if such duplex has not been completed prior to the sale of said easement, and in addition, Seller shall use his reasonable efforts to successfully negotiate permission for a living room addition to the main lodge in conjunction with the sale of said scenic easement, but shall not be liable to Purchaser if such negotiations are not successful.

. . . .

Purchaser acknowledges that, prior to his execution of these presents, Seller has advised him that the *scenic easement herein reserved to Seller is a valuable property right and does and will restrict use of the servient estate*, as generally set forth in Exhibit E.

R., pp. 231–32 (emphasis added).

Exhibit E, referred to and incorporated within the Campbell-Resnick contract, was a four-page contract proposal between the United States Forest Service and unspecified "grantors" (hereafter referred to as the Forest Service easement) which restricted the use of the lands within the easement area from professional, commercial, mining or industrial activity, from subdivision, and from building additional structures with the exception of one duplex.

It is to be noted that in the Resnick contract, Campbell covenanted that on the thirty acres reserved by him there would be no commercial development or subdivision, and that the land would be restricted to residential use. R., Vol. 2, p. 229.

Thus, each tract was unto the other tract both a dominant and a servient estate.

In December of 1979, Harold and Phyllis Thomas, plaintiffs-appellants herein, entered into negotiations with Campbell to purchase the thirty-acre tract still owned by Campbell. Thomas testified that, during negotiations, Campbell represented to him that the "scenic easement" which he had reserved from the Resnick deed had been sold to the Forest Service and that the easement "restricted any of the operations on the Ranch to what it currently was. [The Resnicks] could build an addition onto the lodge, and they could build one additional dwelling unit . . . ." Tr., p. 44. The Thomas-Campbell contract recited: "(c) It is understood and agreed that the Seller has entered into an agreement to sell to the U.S. Forest Service a scenic easement on the adjacent property known as the Shepp Ranch.". R., Vol. 2, p. 15.[1]

Thomas testified that it was in reliance on these representations that the Thomases agreed to purchase the thirty-acre tract for a price of $150,000. The Thomas-Campbell contract of sale, consistent with the restrictive covenant in the Resnick contract restricting development of the thirty acres, prohibited the Thomases from commercial development and subdivision of the property and provided that the property would be used solely for residential purposes.

The "scenic easement," however, had not been and was not thereafter sold to the Forest Service. That proposed transaction fell through. The "scenic easement" was, through mesne conveyances, later quitclaimed to Resnick in order to merge it with Resnick's title to his property being acquired under the Campbell agreement. Campbell and Resnick subsequently proposed to build a large-scale commercial development on Shepp Ranch, having approximately 60 condominium units, tennis courts, a swimming pool and a hydroelec-

---

1. This statement is written documentation that there were discussions of the "scenic easement." Its appearance in the contract, however, is in connection with the time for performance of Campbell's obligation to provide clear title. It continues to add that "The Seller agrees that upon completion of said transaction with the U.S. Forest Service and the closing of said transaction, that out of the proceeds from said sale of the said scenic easement he shall pay the balance due on all encumbrances as set forth herein."

tric generating facility. The Thomases complained to Campbell of any such action by letters, one from Mr. Thomas, with a copy to Mr. Resnick, and a letter from his attorney to Mr. Campbell with a copy to Mr. Resnick, and, gaining no assurances, filed this action seeking an adjudication that they were entitled to the benefits of the "scenic easement," restrictive covenant or implied equitable servitude reserved or created by the Resnick transaction, and to enjoin the defendants from taking any action which would violate such "scenic easement," restrictive covenant or equitable servitude.

The Thomases moved the district court to *pendente lite* enjoin any commercial development on Shepp Ranch. The court received testimony on the motion, and thereafter denied the motion.

## I.

I.R.C.P. 56(c) provides that a judgment may be entered on a summary judgment motion "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment *as a matter of law.*" (Emphasis added.) The facts are to be liberally construed in favor of the party opposing the motion, who is also to be given the benefit of all favorable inferences which might be reasonably drawn from the evidence. *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982).

The court denied a plaintiffs' motion for summary judgment and granted defendants' motion for summary judgment, having taken into consideration the pleadings, affidavits, depositions, and the testimony given at the earlier hearing for the injunction:

> Plaintiffs' theory of recovery is premised upon the fact that Defendant Campbell told Thomas in substance that the property Thomas was purchasing would benefit from a scenic easement which attached to certain adjacent property. As set forth in this Court's Memorandum

Opinion of July 9, 1982, there is a genuine issue as to a material fact left to be determined relative to Plaintiff's theory, i.e., whether or not Campbell told Thomas that the adjacent property was subject to a scenic easement. Based upon the foregoing, Plaintiffs' Motion for Summary Judgment is denied.

Defendants contend that the statements or representations made by Campbell to Thomas concerning the scenic easement during negotiations and prior to the time the sale was reduced to writing will be inadmissible at trial. Defendants contend therefore that they are entitled to Judgment as a matter of law.

Initially, it should be noted that the preliminary negotiations between Campbell and Thomas did culminate in an integrated written agreement (See Real Estate Purchase Agreement, Memorandum Opinion, Exhibit #4).

It is the opinion of this Court that the Real Estate Purchase Agreement was intended to cover, among other things, the scenic easement issue and that it would therefore be improper for the trier of fact to consider statements of Campbell relative to said easement.

Even if the trier of fact were to consider the statements which Thomas attributes to Campbell, an easement could nonetheless not be imposed to benefit the Thomas Property. The statements Campbell allegedly made to Thomas concerning a scenic easement refer to the proposed Forest Service easement which is attached to the Memorandum Opinion as Exhibit #1. A reading of the document makes it clear that the Court cannot step into the shoes of the United States Government and monitor this property over the years and make the decisions which the Government would have been responsible to make. Furthermore, it cannot be realistically contended that Plaintiff should be given the authority to make such decisions.

In the event that Thomas has suffered damages in this case as a result of wrongdoing by Campbell, his remedy is

to seek monetary damages from Campbell, not to seek a declaration that a scenic easement exists which he may enforce.

Based upon the foregoing, Defendants' Motion for Summary Judgment is hereby granted and Judgment will be entered for Defendant and against Plaintiff on Plaintiff's Complaint.
Tr., pp. 36–37.

The foregoing being devoid of supporting authority, it is assumed that reliance was placed upon the authority provided in the Memorandum in Support of Defendants' Motion for Summary Judgment, (R., Vol. 3, p. 386), wherein *Tapper Chevrolet Co. v. Hansen*, 95 Idaho 436, 510 P.2d 1091 (1973), was relied upon. In that case the court denied the admission of the parties' oral representations prior to the execution of a written contract. Thereafter a dispute arose over the impact of an overpass constructed after the seller had sold to the purchaser. The parties in contemplation of this occurrence provide in the contract for a reduction in the purchase price of $40,000 in the event that an overpass was built on the land sold to the buyer. After the overpass was constructed, the seller contended that the impact was not as great as originally contemplated, and the oral statements of the parties surrounding negotiations over the overpass should be admitted. The lower court refused to admit this evidence, which ruling was not disturbed on appeal.

Reliance on *Tapper* in this case is misplaced; *Tapper* is readily distinguishable. There the parties had specifically provided for the eventuality of overpass construction on the land in question by agreeing on a purchase price reduction. It was only after the fact that the seller sought to alter the terms of the written agreement. The Court held that where the terms of an agreement are clearly set forth in a written contract, then parol evidence as to the meaning of those terms would not be admitted.

In this case there were between Thomas and Campbell no negotiations leading to or involving the Campbell-Resnick contract. The dispute is not over the meaning of certain terms in the Thomas-Campbell agreement, but rather concerns the representations of a seller made to a buyer to induce the buyer to purchase the land in question. Fraud in the inducement is always admissible to show that representations by one party were a material part of the bargain. *Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 223, 541 P.2d 1184, 1191 (1975); *Utilities Engineering Institute v. Criddle*, 65 Idaho 201, 141 P.2d 981 (1943); *Kloppenburg v. Mays*, 60 Idaho 19, 34, 88 P.2d 513, 519 (1939); *Wollan v. McKay*, 24 Idaho 691, 135 P. 832 (1913). Hence, the trial court erred in ruling that the parol evidence rule would preclude admission of evidence which the Thomases offered to establish representations allegedly made fraudulently with the purpose of inducing them into the transaction.

*Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975), involved a case in which one party claimed that it was induced to enter into a contract for the lease of three motor scraper units by the second party's fraudulent representations and offered evidence to prove the fraudulent nature of those representations. This Court stated that even where there is a written contract, "[c]ase law is well settled in Idaho that parol evidence is admissible for the purpose of showing fraud." *Id.* at 223, 541 P.2d at 1191. The Court held that the district court erred in excluding at trial parol evidence offered to prove inducement to enter into a contract by fraudulent misrepresentations. *See Utilities Engineering Institute v. Criddle*, 65 Idaho 201, 141 P.2d 981 (1943) (parol evidence admissible to show that defendant was induced to enter into a written contract of guaranty by fraudulent representations). In *Maine v. Garvin*, 76 N.M. 546, 417 P.2d 40, 43 (1966), the rule is stated thus: "Parol evidence may not be received when its purpose and effect is to contradict, vary, modify, or add to a written agreement, but is generally admissible

to ... show fraud, misrepresentations or mistake."

■ Parol evidence is permitted to establish a party's right to an equitable interest in land. In *Ute Park Summer Homes Association v. Maxwell Land Grant Co.,* 83 N.M. 558, 494 P.2d 971 (N.M.1972) (*Ute Park II*), the New Mexico Supreme Court held that a legally enforceable right came into existence in favor of a grantee by the grantor's use of a plat and by representations made by the grantor's agents when selling lots. The court rejected the argument that the plaintiffs' equitable claims were barred by the parol evidence rule and the statute of frauds:

"[R]ights such as those under consideration here 'are created by implied grant, implied covenant, or estoppel. It makes very little difference upon which of the above three theories the holding is based.'

"Obviously, to create such rights in the mentioned fashion does not require an instrument in writing signed by the party to be charged....

"We hold that the evidence of statements and representations of defendant's agents was ... not precluded by the parol evidence rule or the statute of frauds ...."

494 P.2d at 973–74.

In an analogous situation, this Court, in *Middlekauff v. Lake Cascade, Inc.,* 103 Idaho 832, 654 P.2d 1385 (1982), stated that the statute of frauds did not preclude plaintiffs from introducing oral testimony in order to establish an equitable interest in adjoining land. In *Middlekauff,* the plaintiffs alleged that they were induced to purchase land pursuant to representations made by Lake Cascade, Inc., that the property adjacent to their property would be used as a common area for recreational activities. The Court cited *Ute Park Summer Homes Association v. Maxwell Land Grant Co.,* 77 N.M. 730, 427 P.2d 249 (N.M. App.1967) (*Ute Park I*), aff'd, 83 N.M. 558, 494 P.2d 971 (1972), with approval for the proposition that "under certain circumstances a writing is not required to estab-

lish a legally enforceable interest and any number of factors, if found by the trial court to be sufficient, may justify a finding that the plaintiffs have an interest in the land." *Id.* 103 Idaho at 835, n. 2, 654 P.2d 1385. *See Remilong v. Crolla,* 576 P.2d 461 (Wyo.1978) (statute of frauds not a bar to enforcement of restrictive covenant precluding placement of trailers on neighboring land. "The declared legislative policy encompassed in the statute of frauds should be departed from only when such action is necessary to 'avoid the fraud, and accomplish what justice and good conscience demand.' "); *Rodgers v. Reimann,* 227 Or. 62, 361 P.2d 101 (Or.1961) (statute of frauds is no impediment to creation of equitable servitude).

■ Similarly to *Middlekauff* and *Ute Park I and II,* the plaintiffs herein alleged that Campbell's representations "that Shepp Ranch would never be commercially developed and that a scenic easement had been imposed upon the Shepp Ranch was a material part of the bargain ... and was important inducement for the Plaintiffs to purchase the property ...." Complaint, R., p. 4. Thus, under the theories of *Ute Park I and II* and *Middlekauff,* evidence supporting the plaintiffs' equitable claims should not have been preliminarily excluded under either the parol evidence rule or the statute of frauds.

## II.

The second alternative basis for the district court's entry of summary judgment in favor of defendants was that the terms of the easement were too vague to be enforceable. We are not so persuaded. The Campbell-Resnick contract of sale specifically reserved to Campbell a "scenic easement" to be in substantial conformance with the terms and conditions of an attached "Forest Service easement." The proposed four-page "Forest Service easement" contains many detailed provisions, providing in substance that the land should not be subdivided or used for commercial, mining or industrial activity; and that no additional structures shall be placed within

the easement area except for one additional duplex cabin of specified dimensions. Although the details of the easement were, for the most part, quite specific, it is true that there are several provisions in it requiring approval by the Secretary of Agriculture before replacement or repair of present structures or before the duplex was built. The respondents argued, and the district court apparently agreed, that these provisions precluded enforcement of the easement on the reasoning that:

> A reading of the [Forest Service easement] makes it clear that the Court cannot step into the shoes of the United States Government and monitor this property over the years and make the decisions which the Government would have been responsible to make. Furthermore, it cannot be realistically contended that Plaintiff should be given the authority to make such decisions.
>
> R., p. 437.

■ It is an established rule that mere ambiguity of a restrictive covenant [2] does not render it void or unenforceable. *Alloway v. Moyer*, 275 Or. 397, 550 P.2d 1379 (Or.1976); *See Lenhoff v. Birch Bay Real Estate, Inc.*, 22 Wash.App. 70, 587 P.2d 1087 (1978); *Noyes v. McDonnell*, 398 P.2d 838 (Okla.1965). Once a restrictive covenant has been determined to be ambiguous, the court must determine the intent of the parties at the time the instrument was drafted, gathered from the language used and the circumstances which existed at its formulation. *Riley v. Stoves*, 22 Ariz.App. 223, 526 P.2d 747 (1974); *Alloway v. Moyer, supra; Lenhoff, supra.* In determining the parties' intent, "the conduct of the parties may be proven to establish the interpretation placed on the agreement by the parties themselves. The mutual interpretation of contracts affords cogent evidence of their meaning." *Noyes, supra*, 398 P.2d at 842, quoting *McDowell v. Droz*, 179 Okl. 119, 64 P.2d 1210 (1939).

■ "An ambiguous restriction requires only a reasonable construction which is most favorable to the servient estate." *Alloway*, 550 P.2d at 1381. "Restrictions, being in derogation of the common-law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of the land." *Lenhoff*, 587 P.2d at 1089, quoting *Burton v. Douglas County*, 65 Wash.2d 619, 621–22, 399 P.2d 68, 70 (1965). Thus, those restrictions found to be clearly expressed will be applied against the grantor's land while doubtful restrictions will be resolved in favor of the free use of the land.

■ We hold that those provisions vesting discretionary authority in the Secretary of Agriculture do not render the "scenic easement" void or unenforceable. On remand, if it is determined that the Thomases are entitled to the benefit of the "scenic easement" reserved by Campbell, the district court is directed to interpret any ambiguous terms in the "easement" in light of the intent of its drafters, applying the aforementioned rules of construction.

### III.

■ The third basis for the district court's order of summary judgment in favor of the defendants was that if "Thomas has suffered damages in this case as a result of wrongdoing by Campbell, his remedy is to seek monetary damages from Campbell, not to seek a declaration that a scenic easement exists which he may enforce." R., p. 437. Although there is the established principle of law that equity will not afford relief to a plaintiff where there is an adequate remedy at law, " 'it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends

---

**2.** Although given the appellation of a "scenic easement," the document in question more closely resembles a restrictive covenant than it does an easement. A restrictive covenant is defined as a "[p]rovision in a deed limiting the use of the property and prohibiting certain uses," Black's Law Dictionary, p. 1182 (5th Ed. 1979), whereas an easement is defined as a "right of use over the property of another." *Id.* at 457.

of justice and its prompt administration as the remedy in equity.' " *Rich v. Braxton*, 158 U.S. 375, 406, 15 S.Ct. 1006, 1017, 39 L.Ed. 1022 (1895) (citations omitted); *see* Am.Jur.2d Equity § 94 and cases cited therein. The applicability of this rule depends on the circumstances of each case. Equitable "[r]elief will be granted when in view of all the circumstances, to deny it would permit one of the parties to suffer a gross wrong at the hands of the other party, who brought about the condition." *Thisted v. Country Club Tower Corp.*, 146 Mont. 87, 405 P.2d 432, 436 (1965), quoting *Fey v. A.A. Oil Corp.*, 129 Mont. 300, 285 P.2d 578, 587 (1955). Restrictive covenants and other restrictions on the use of land are generally enforced through the use of equitable proceedings, i.e., specific performance and injunctions, on the theory that legal remedies do not furnish adequate relief. *See* Dobb, Remedies, p. 364 (1973) and cases cited therein. The basic premise underlying the remedy of specific performance in land transactions is the uniqueness of land, as distinguished from chattels.

In *Smith v. Nelson*, 149 Colo. 200, 368 P.2d 566 (1962), equitable relief was held proper in an action to enjoin violation of a restrictive covenant against subdividing lots, building too close to the street and building subsized housing. In *Reed v. Williamson*, 164 Neb. 99, 82 N.W.2d 18 (1957), equitable relief was afforded to enjoin defendants from drilling for oil and gas on land which was impressed with a restrictive covenant precluding such activity. Equity was used in *Riley v. Stoves*, 22 Ariz.App. 223, 526 P.2d 747 (1974), to enforce a restrictive covenant restricting residents of a trailer court to those twenty-one years or older. *See R & R Realty Co. v. Weinstein*, 4 Ariz.App. 517, 422 P.2d 148 (1967) (holding that grantee of restriction may enforce covenant in equity); *Sievers v. Zenoff*, 94 Nev. 53, 573 P.2d 1190 (1978) (injunction prohibiting interference with easement over servient tenement held proper); and *Remilong v. Crolla*, 576 P.2d 461 (Wyo. 1978) (equity used to enforce restrictive covenant against placement of trailers on adjoining land). Similarly, equitable relief

is the ordinary remedy where a zoning restriction is allegedly violated. *See, e.g., City of Lewiston v. Knieriem*, 107 Idaho 80, 685 P.2d 821 (1984).

 Construing the record most favorably to the Thomases, as we must, it is apparent that the following facts, alleged in their pleadings and testified to at the preliminary injunction hearing, if proven, would demonstrate that the Thomases have no adequate remedy at law. First, Campbell's representations that Shepp Ranch would never be commercially developed was a material part of the bargain, was relied on, and was an important inducement to their entering the contract. Second, the enforcement of the "scenic easement" is necessary to preserve the character of this land as pristine residential property located in the middle of a designated wilderness area. And, their purchase of the property was for the peace and seclusion afforded by property surrounded by wilderness. A unique factor in this case, which in and of itself would preclude relegating the Thomases to monetary relief, is that in reliance on the "scenic easement," said to be in existence, they agreed to several covenants restricting them in the use of their own land, including prohibiting commercial development and subdivision, and restricting the land to private and exclusively residential use. As Thomas stated in his affidavit offered in support of the application for a preliminary injunction:

If Shepp Ranch is commercially developed the value of my property as secluded, private residential property will be destroyed. The construction process itself will destroy the peace and quiet. The sixty units will change the character of Shepp Ranch and my property from secluded rustic and highly private residential property to slick, high priced and highly commercial investment property. Tennis courts and other additions to Shepp Ranch will further destroy the undeveloped and rustic character of Shepp Ranch and my property. When I purchased my thirty acres Defendant Campbell promised me that this type of intense

**406**

commercial development would never occur on Shepp Ranch and could not occur due to the express scenic easement imposed on the property.

R., p. 33.

The summary judgment is reversed. The case is remanded for further proceedings consistent with this opinion. No attorney's fees are awarded on appeal. Recoverable costs are awarded to appellants.

DONALDSON, C.J., BAKES and HUNTLEY, JJ., and TOWLES, J. pro tem, concur.