719 P.2d 1169

James MIDDLEKAUFF, Ian G. Beswick, Lester R. Updike, Leon Hales and Richard Lee, Plaintiffs-Respondents,

v.

LAKE CASCADE, INC., an Idaho corporation; Walter E. Heller & Co.; John G. Pierce, Trustee; Bric of America, Inc., Defendants-Appellants,

and

Intermountain State Bank, an Idaho corporation; Dean Dishman and Patricia Dishman, husband and wife; and Leonard Mallea and Patricia Mallea, husband and wife, Defendants.

James MIDDLEKAUFF, Ian G. Beswick, Lester R. Updike, Leon Hales and Richard Lee, Plaintiffs-Respondents,

v.

Dean DISHMAN and Patricia Dishman, husband and wife; and Leonard Mallea and Patricia Mallea, husband and wife, Defendants-Appellants,

and

Lake Cascade, Inc., an Idaho corporation; Walter E. Heller & Co.; John G. Pierce, Trustee; Bric of America, Inc.; and Intermountain State Bank, an Idaho corporation, Defendants.

Nos. 15941, 16002.

Supreme Court of Idaho.

May 19, 1986.

Gerald L. Weston of Gigray, Miller, Dow-
nen & Weston, Caldwell, for Lake Cascade,

Inc., Walter E. Heller & Co., John G. Pierce and Bric of America.

Kenneth L. Mallea of Mallea & Scrivner, Boise, for Leonard and Patricia Mallea.

Thomas A. Miller of Hawley Troxell Ennis & Hawley, Boise, for Dean and Patricia Dishman.

E. Don Copple of Davison, Copple, Copple & Copple, Boise, for plaintiffs-respondents.

BISTLINE, Justice.

Plaintiffs—owners of property located in the Lake Cascade subdivision which they purchased from Lake Cascade, Inc. (Lake Cascade)—alleged an interest in an undeveloped area, which interest was based on Lake Cascade's representations that the area would be maintained as a common recreational area. Initially, the district court granted defendants' motion for summary judgment, but this Court reversed and remanded for trial. *Middlekauff v. Lake Cascade, Inc.*, 103 Idaho 832, 654 P.2d 1385 (1982) (*Middlekauff I*). Trial resulted in judgment for the plaintiffs. Defendants appeal. We affirm and remand.

## I.

The facts of this case leading up to this Court's decision in *Middlekauff I* were stated in that opinion as follows:

The plaintiffs-appellants are owners of real property purchased from Lake Cascade, Inc. and located in the Lake Cascade Subdivision in Valley County, Idaho. The property that is the subject matter of this appeal is situated between the subdivision and Lake Cascade Reservoir and was owned by Lake Cascade, Inc. when the plaintiffs purchased the subdivision property.

The defendant-respondent, Lake Cascade, Inc. is an Idaho corporation and a wholly owned subsidiary corporation of the defendant-respondent, Bric of America, Inc. The defendants-respondents Walter E. Heller & Co. and John G. Pierce are each the owners of mortgages

that encumber the property involved in this dispute and the defendants-respondents, Dean and Patricia Dishman and Leonard and Patricia Mallea, subsequently purchased a portion of the disputed property.

The dispute began after the plaintiffs-appellants purchased the land from Lake Cascade, Inc. The trial court stated it appeared that when the plaintiffs-appellants purchased the property during the late 1960's and early 1970's, Lake Cascade, Inc. orally represented that the property adjacent to their newly purchased property would be "used and would remain as a common area for a boat basin, landing strip and other recreational activities." The property and the facilities were used by the owners of the lots in the subdivision as a common area until 1977.

On January 29, 1973, Bric of America, Inc. and Lake Cascade, Inc. filed a petition for reorganization under Chapter XI of the Federal Bankruptcy Act of 1898. The parties filed the reorganization petition in the United States District Court for the Middle District of Florida.

Later in August of 1973, Leonard and Patricia Mallea made a written offer to Lake Cascade, Inc. to purchase a small parcel of the property in dispute. The Federal District Court authorized the private sale "free and clear of all liens and encumbrances."

In the spring of 1974 the plaintiffs-appellants, as set forth in answers to an interrogatory, became aware of the impending bankruptcy proceedings. Attempting to assert their rights in the property, they filed affidavits in the public records of Valley County. Upon learning of these affidavits, Lake Cascade, Inc. filed a complaint in the Florida Bankruptcy Court requesting that the affidavits claiming an interest in the property be declared null and void. Two of the appellants, Leon Hales and Richard Lee, expunged the affidavits. The other appellants did not file similar releases of any purported rights in the property, but rather, filed an answer and affirmative

defense in the Florida Bankruptcy Court. The court found the affidavits to be null and void and ordered the appellants in technical contempt but stated they could purge themselves of that contempt "by filing in the public records where the affidavits were filed, suitable documents indicating that they release any claimed interest under these affidavits. . . ." The court also ordered that "this relief granted to the plaintiff [the defendants-respondents in this action] is without prejudice to any rights the defendants [the plaintiffs-appellants in this action] may have and any remedies they may have against the Plaintiff other than by filing affidavits to effect the title to plaintiff's land. . . ." The appellants took no further action at this time.

In 1976, during the bankruptcy reorganization, Lake Cascade, Inc. conveyed a portion of the property in dispute to Dean and Patricia Dishman. Subsequent to this conveyance the property continued to be used as a common area until the summer of 1977 when the Dishmans fenced the property that they had acquired from Lake Cascade Inc. Also, in August 1978, the Malleas denied access to a party seeking to cross the property on his way to the lake.

On February 26, 1979, the plaintiffs-appellants then filed suit in district court alleging that the parcel of land in question had not been kept as a common area as represented and requested that the court enter its judgment declaring that the real property be utilized exclusively for the common use purposes that were enumerated in the complaint. The defendants-respondents answered and asserted a number of affirmative defenses, including the statute of limitations and res judicata. *Id.* at 833–34, 654 P.2d at 1386–87.

In *Middlekauff I* this Court unanimously reversed the district court's granting of defendants' motion for summary judgment. The district court had "concluded that the plaintiffs-appellants' cause of action sounded in fraud and that the purported fraud occurred in 1974 when Lake Cascade, Inc.

conveyed a small portion of the land to the Malleas 'free and clear of all liens and encumbrances.' " *Middlekauff I, supra,* 103 Idaho at 834, 654 P.2d at 1387. Because the plaintiffs' action was not filed until 1979, the district court held that I.C. § 5–218(4)—the three year statute of limitations for actions grounded in fraud—barred the plaintiffs' claims. *Middlekauff I, supra,* 103 Idaho at 834, 654 P.2d at 1387. The district court also held that an action for breach of contract was also time-barred. The *Middlekauff I* decision did not address this latter part of the district court's decision.

In *Middlekauff I,* this Court held "that an alleged promise respecting the use of land is neither a 'lien' nor an 'encumbrance' " as this Court perceived the Bankruptcy Court to use those terms. Thus, the act of fraud did not occur and the statute of limitations did not begin to run at the time of the conveyance in 1974. *Id.* Having made this determination, this Court:

remanded[ed] this case to the district court to establish at trial whether a cause of action exists and if necessary to determine at what point the statute of limitations did begin running. Where, as here, the trial court granted the respondents' motion for summary judgment other pertinent issues have not been resolved so it will be necessary for the court to make findings of fact and conclusions of law regarding (1) whether the plaintiffs-appellants have an interest that is enforceable against the original promisors, Lake Cascade, Inc., and (2) whether that right, if it does exist, is now enforceable against the subsequent purchasers, the Malleas and the Dishmans, and whether it continues to be enforceable against the original promisors. A resolution of these questions will enable the trial court to decide whether a cause of action exists and if so, to then determine when the statute of limitations began running. *Id.* at 834–35, 654 P.2d at 1387–88.

In fulfillment of these directions, the district court held (1) that the plaintiffs have an enforceable interest against Lake Cascade, (2) that that interest is enforceable against the Malleas and Dishmans, as they were not bona fide purchasers without notice, and (3) the statute of limitations had not expired.

Having made these findings, the district court awarded judgment to the plaintiffs. The district court held that Lake Cascade, Inc. held the disputed area in trust as a common area for the use of the plaintiffs, and ordered the Malleas and Dishmans to remove obstructions interfering with the common use of the area.

The defendants raise a number of issues on appeal which we address below.

## II.

We first address those issues on appeal which generally deal with the question of whether plaintiffs had an enforceable interest in the common area.

### A. *The Rule of the Ute Park Decisions.*

To aid in answering the question of whether the plaintiffs had an enforceable interest in the common area by reason of (1) the representations of Lake Cascade and its agents and (2) the use of the brochure, this Court in *Middlekauff I* directed the attention of the district court to *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 77 N.M. 730, 427 P.2d 249 (1967) (*Ute Park I*), and *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.*, 83 N.M. 558, 494 P.2d 971 (1972) (*Ute Park II*).[1] *Middlekauff I, supra,* 103 Idaho at 839, 654 P.2d at 1388. Guided by the *Ute Park* decisions and by this Court's subsequent decision of *Thomas v. Campbell*, 107 Idaho 398, 690 P.2d 333 (1984), the district court held that as Lake Cascade and its agents had identified the common area to the plaintiffs, represented that it would remain a common area for recreational purposes, and as the plaintiffs had

purchased their lots at a premium price based on these representations, the plaintiffs had an enforceable interest in the common area. Defendants argue that the rule of the *Ute Park* decisions does not control because the developer in that circumstance had designated the area in which lot owners alleged an interest as a recreational area on a plat. This argument ignores the clear indications in the *Ute Park* decisions, in *Thomas,* and in *Middlekauff I* itself that oral representations *without* the use of a plat were sufficient parol evidence to establish a legally enforceable interest.

In *Ute Park II,* the New Mexico court explained:

> The opinion on the first appeal [*Ute Park I*] makes repeated references to use of the plat *and* representations by the defendant's agents in selling the lots. The first opinion is not solely concerned with the words appearing on the plat. Rather, it is concerned with the definition of plaintiffs' rights, as determined not only by the plat itself, but also by the use made of it *and* the mentioned representations. *Ute Park II, supra,* 494 P.2d at 973 (emphasis added).

This passage indicates that the plat is not the only means by which a right can be created, but that oral representations could do so as well. Any doubt left by the above passage is resolved in the following:

> In the opinion on the first appeal, the court quoted with approval from *Cree Meadows, Inc. (NSL) v. Palmer,* 68 N.M. 479, 362 P.2d 1007 (1961) to the effect that rights such as those under consideration here "are created by implied grant, implied covenant, or estoppel. It makes very little difference upon which of the above three theories the holding is based."

> Obviously, to create such rights in the mentioned fashion *does not require an instrument in writing signed by the*

---

1. In *Middlekauff I* we mistakenly cited *Ute Park I* as a decision of the New Mexico Court of Appeals.

*party to be charged. Id.* (emphasis added; citations at end of passage omitted).

Obviously, if no writing is required to create a right, then a plat, which is a written instrument, is not required.

Neither did this Court in *Middlekauff I* leave any doubt that a plat or other writing was not required. The Court stated:

The Court in *Ute Park, supra,* found that a legally enforceable right came into existence by the grantor's use of the plat and the representations made by the grantor's agents when selling the lots. We are not directing the trial court to find the plaintiffs have an interest in the land *only* if (1) representations were made and (2) the plat contained restrictions. *Ute Park* stands for the proposition that under certain circumstances a *writing is not required to establish a legally enforceable interest and any number of factors, if found by the trial court to be sufficient, may justify a finding that the plaintiffs have an interest in the land. See Monaco v. Bennion,* 99 Idaho 529, 585 P.2d 608 (1978) (where this Court held that, along with other evidence, an illustration of a road, although not actually platted, was sufficient to create an easement). *Middlekauff I, supra,* 103 Idaho at 835 n.2, 654 P.2d at 1388 n. 2 (emphasis added).

This point was reaffirmed in *Thomas, supra,* 107 Idaho at 403, 690 P.2d at 338. The district court correctly assessed the "other" factors indicative of the plaintiffs' interest. We find no error regarding this issue.

B. *Lake Cascade's Liability vis-a-vis Representations By Its Real Estate Agents.*

Defendant Lake Cascade argues that the real estate agents had no authority to make representations about the disputed area, and that Lake Cascade (as principal) should not be liable for the unknown and unauthorized representations of its agents. Unfortunately for defendants, the latter does not correctly state the controlling rule of the law of agency. The two cases upon which the defendants rely for this rule both involve fraud and misrepresentation on the part of the agent. *Dellwo v. Peterson,* 32 Idaho 172, 178, 180 P. 167, 169 (1919); *Ringer v. Wilkin,* 32 Idaho 330, 337, 183 P. 986, 989 (1919). Here, plaintiffs alleged no fraud or misrepresentation on the part of the agents; rather, they allege that the agents accurately represented the area consistent with Lake Cascade's marketing strategy.

The rule of agency applicable here is as follows:

Apparent authority is created when a principal voluntarily places an agent in such a position that a person of ordinary prudence, conversant with the business usages and the nature of a particular business, is justified in believing that the agent is acting pursuant to existing authority. Where the existence of an agency relationship is disputed, it is a question for the trier of fact to resolve from the evidence. *Clark v. Gneiting,* 95 Idaho 10, 12, 501 P.2d 278, 280 (1972) (footnotes omitted); *see also Bailey v. Ness,* 109 Idaho 495, 708 P.2d 900, 902 (1985).

The district court clearly did not err in finding that the real estate agents had apparent authority.

In such a case, the principal is estopped as against a third party from denying the agents' authority, *Clements v. Jungert,* 90 Idaho 143, 152, 408 P.2d 810, 814 (1965), and is "bound by the acts of their agents which fall within the apparent scope of the authority of the agents...." *Branom v. Smith Frozen Foods of Idaho, Inc.,* 83 Idaho 502, 511, 365 P.2d 958, 963 (1961). Lake Cascade cannot escape the consequences of the representations of its agents.

C. *Estoppel Against Plaintiffs Hales and Lee.*

The plaintiffs filed affidavits asserting their interest in July, 1974. Because the bankruptcy proceeding had instituted an automatic stay on such claims, Lake Cascade filed a complaint against the plain-

tiffs. To avoid being found in contempt, Hales and Lee expunged their affidavits. The other plaintiffs filed answers in the bankruptcy court. That court found the plaintiffs' affidavits to be null and void and the plaintiffs in technical contempt, but provided that they could purge themselves of contempt by filing releases of the claims made in their affidavits. Lake Cascade argues that Hales and Lee are estopped from now asserting their interest.

Significantly, the bankruptcy court observed the following concerning the plaintiffs' filing of a release:

"[T]his relief granted to the plaintiff [the defendants-respondents in this action] is without prejudice to any rights the defendants [the plaintiffs-appellants in this action] may have and any remedies they may have against the Plaintiff other than by filing affidavits to effect the title to plaintiff's land...." *Quoted in Middlekauff I, supra,* 103 Idaho at 833, 654 P.2d at 1386.

The bankruptcy court apparently did not intend this action to preclude the instant plaintiffs from seeking remedy in the courts of Idaho. Hales and Lee took the same action as the other plaintiffs, albeit earlier. No doubt the bankruptcy court viewed their second filing as non-prejudicial, just as it viewed the similar filing by the other plaintiffs.

■ In any event, there is no basis to support an estoppel against Hales and Lee. This Court has stated:

It is quite generally held that where a litigant, by means of such sworn statements, obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter. *Loomis v. Church,* 76 Idaho 87, 93-94, 277 P.2d 561, 565 (1954).

Hales and Lee obtained no "judgment, advantage or consideration from one party"; they merely acted to avoid being found in contempt of the bankruptcy court. Accordingly, estoppel does not apply.

## D. *Class Action Suit Requirements.*

Lake Cascade argues that because plaintiffs sought to establish rights which the other lot owners in the subdivision also might hold, they were required to bring a class action suit on behalf of all of the lot owners in compliance with I.R.C.P. 23(a) *et seq.* This argument is totally devoid of merit.

It is true that, as Professor Moore explained, "[A] party or parties *who seek* to bring an action on behalf of a class, or against a class, or an action by a class against a class, must bring themselves within the requirements of Rule 23." 3B *Moore's Federal Practice* para. 23.02–2 (2d ed.1985) (emphasis added; footnotes omitted). This Court has held that requirements of I.R.C.P. 23 *et seq.* are mandatory on plaintiffs who *sought* to "maintain their protest as a class proceeding...." *Kerner v. Johnson,* 99 Idaho 433, 443–44, 583 P.2d 360, 370–71 (1978).

■ Here, however, the plaintiffs brought this action only to enforce their *own* rights. Plaintiffs are never *required* to seek the vindication of a class; I.R.C.P. 23(a) *et seq.* merely establish the conditions under which "[o]ne or more members of a class *may* sue or be sued as representative party on behalf of all...." I.R.C.P. 23(a) (emphasis added). Consequently, I.R.C.P. 23(a) *et seq.* have no application.

## E. *Alleged Pretrial Settlement.*

Lake Cascade alleges that the parties had entered a settlement agreement which the district court erred in failing to enforce. Plaintiffs dispute Lake Cascade's claim that their counsel had agreed to a settlement; plaintiffs allege their counsel merely recommended the settlement, which they rejected. The district court apparently resolved this factual dispute against Lake Cascade. Nothing in the record would lead us to find its conclusion to be clearly erroneous. *See Rueth v. State,* 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982).

F. *Defendants Malleas' and Dishmans' Alleged Status as Bona Fide Purchasers.*

Defendants Malleas and Dishmans dispute the district court's factual determination that they were not good faith *bona fide* purchasers from Lake Cascade, and thus were subject to the plaintiffs' interest in the area. This Court has stated: "One who purchases or encumbrances with notice of inconsistent claims does not take in good faith, and one who fails to investigate the open and obvious inconsistent claim cannot take in good faith." *Langroise v. Becker,* 96 Idaho 218, 220, 526 P.2d 178, 180 (1974). The district court found that:

> Defendants the Malleas and the Dishmans had *actual knowledge* that the disputed area was being used as a common area at the time they made their purchases from the bankruptcy court. The airstrip and the boat basin were in place and both were actively in use. There were trails and wheel track roads through the area including the locations they purchased. These facts would at least put them on notice of inquire regarding the property in question.... Therefore, they are not bona-fide purchasers without notice. (Emphasis added.)

There is no dispute that the Malleas and Dishmans were aware of the use of the common area and the plaintiffs' claims of an interest. The district court did not clearly err in finding the Malleas and Dishmans were not good faith *bona fide* purchasers without notice. *Rueth, supra.*

## III.

We now address defendants' arguments relating to the question of when the statute of limitations period commenced.

A. *The Meaning of the Terms "Liens" and "Encumbrances" as Used by the Bankruptcy Court.*

As previously explained, the bankruptcy court authorized the sale of the lots to the Malleas and Dishmans "free and clear of all liens and encumbrances." The district court originally ruled that these terms encompassed the plaintiffs' interests. If this were true the statute of limitations, whether for fraud or for breach of contract, began to run upon the conveyance in 1974. However, in *Middlekauff I* this Court held that the plaintiffs' alleged interest was "neither a 'lien' or an 'encumbrance.'" 103 Idaho at 834, 654 P.2d at 1387. Defendants argue as they did on first appeal that plaintiffs' interest is an encumbrance, and ask this Court to reverse its holding to the contrary. We decline to do so.

Our purpose in *Middlekauff I* was only to divine the import of the bankruptcy court's language, not to establish a universal definition for the term "encumbrance" for all contexts. For guidance we looked to the *most applicable* statute defining "encumbrance." We found it in *Idaho Code,* Title 55, Chapter 6, which concerns "Transfer of Real Property." I.C. § 55–613 of that chapter provides: "The term 'encumbrances' includes taxes, assessments, and all liens upon real property." Clearly, plaintiffs' interest in the use of the common area does not readily fall within this definition. The bankruptcy court most likely intended a similar narrow construction of the term "encumbrances."

Affirmative indication that the bankruptcy court intended to use the term "encumbrance" narrowly is reflected in its later disposition of plaintiffs' affidavits. The bankruptcy court's sale authorization (made "free and clear of all liens and encumbrances") was dated April 17, 1974. The plaintiffs filed their affidavits asserting their interest in July 1974. The bankruptcy court held the affidavits null and void for violation of the automatic stay, but observed that:

> "this relief granted to the plaintiff [defendants-respondents in this action] is without prejudice to any rights the defendant [plaintiffs-appellants in this action] may have and any remedies they may have against the Plaintiff other than by filing affidavits to effect the title to plaintiff's land ...." *Quoted in Middle-*

*kauff I, supra* 103 Idaho at 835–36, 654 P.2d at 1388–89.

Had the bankruptcy court already authorized the sale of the lots free of the instant plaintiffs' interest (by including that interest in the term "encumbrance"), then this qualifying language would have been unnecessary. Indeed, the instant plaintiffs would have had no "rights" to pursue. As we stated in *Middlekauff I:*

> Such language is seemingly conclusive that *the Bankruptcy Court did not purport to adjudicate that the appellants had no interest in the land,* but only that procedurally the affidavits were null and void because they were in violation of the automatic stay that is imposed when the bankruptcy petition is filed. By the language used the court implicitly reserved to the appellants any rights other than by the filing of the affidavits. *Id.* at 836, 654 P.2d at 1389 (emphasis added).

We adhere to our holding in *Middlekauff I* "that the statute of limitations did not begin running when the Bankruptcy Court purported to convey the land 'free of all liens and encumbrances' ..." *Id.* at 834, 654 P.2d at 1387.

### B. *Statute of Limitations.*

The defendants argue that even if the plaintiffs' interest was not an "encumbrance," the statute of limitations should have begun to run in 1973 or 1974. The defendants suggest that regardless of which statute of limitations applies, it would have begun to run when the defendants acted to repudiate the plaintiffs' interest.

■ The district court found as follows: The sale of the parcels to Mallea and Dishmans did not start the running of the statute of limitation. The bankruptcy court did not authorize those sales free [of] Plaintiffs' alleged interest in the property in question. *Middlekauff, supra.* As the Plaintiffs have an interest in the nature of an easement, *Ute Park I, supra* [427 P.2d] at 253, the statute of limitations would not start to run until the purchasers did something to interfere with Plaintiffs' right to common use. See *Shelton v. Boydstun Beach Ass'n,* 102 Idaho 818, 641 P.2d 1005 (App.1982) (statute of limitations began to run on adverse possession claim against easement when Plaintiff began to improve land in a manner inconsistent with the express purpose of the easement). In the case of Mallea, the statute would start to run when he blocked the road to the boat basin. That was August, 1978. In the case of Dishman, the statute would start when he erected his fence. That was in 1977.

In reference to the balance of the common area, Lake Cascade, Inc. has done nothing to interfere with the use of the common area. Under the circumstances, there is no issue of statute of limitations as against Lake Cascade, Inc.

The district court held that whichever statute of limitations applied, it would not have expired prior to the plaintiffs' claim. We both defer to and agree with the district court's analysis of the law and its application of the facts.

### IV.

The decision of the district court is *affirmed.* However, we must remand to the district court for a determination of whether the interest runs with the land or with the land owners, and, if the interest runs with the land, to modify the judgment to provide a description of said lands.

Costs to plaintiffs. No award of attorney's fees.

DONALDSON, C.J., HUNTLEY, J., and McFADDEN and WALTERS, JJ. Pro Tem., concur.