In the Matter of BRIC OF AMERICA, INC., et al., Debtor(s).

LAKE CASCADE, INC., Plaintiff,

v.

James D. MIDDLEKAUFF, Ian G. Beswick, Lester R. Updike, Leon Hales, and Richard Lee, Defendants.

Bankruptcy No. 73–26–ORL.
Adv. No. 86–163.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 28, 1987.

Michael G. Williamson, Lynnea S. Concannon, Maguire, Voorhis & Wells, P.A., Jules S. Cohen, Jules S. Cohen, P.A., Orlando, Fla., for plaintiff.

E. Don Copple, Davison, Copple, Copple & Copple, Boise, Idaho, Bernard C. O'Neill, Patricia Daugherty, O'Neill & Chapin, Orlando, Fla., for defendants.

## ORDER ON MOTION TO VACATE OR IN THE ALTERNATIVE, TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is an Amended Complaint for Declaratory Judgment, Injunctive Relief and Order of Contempt, filed by Lake Cascade, Inc. (Lake Cascade), and a Motion to Vacate or in the Alternative, to Dismiss, filed by the Defendants named in the above-captioned adversary proceeding. The issues were submitted for this Court's consideration on undisputed facts as appear from documentary evidence and having considered the Motion, together with the record, having considered all submissions and arguments of counsel, this Court now finds and concludes as follows:

In January 1973 Bric of America, Inc. (Bric), and its subsidiaries, one of which is Lake Cascade, filed their voluntary Petition under Chapter XI under the Bankruptcy Act of 1898. At all times material and relevant to the Chapter XI case Lake Cascade has been the owner of land located in the State of Idaho. During the Chapter XI the following individuals filed in the public records of Valley County, Idaho, affidavits by which they attempted to assert an easement in Lake Cascade's real property: Norman Bomengin (Bomengin), Ian G. Beswick (Beswick), Lester R. Updike (Updike), Robert J. Madden (Madden), Charline Javernick (Javernick), James D. Middlekauff (Middlekauff), Richard Lee (Lee) and Leon Hales (Hales). In September of 1974, Lee and Hales voluntarily expunged their claims by filing another affidavit. On December 9, 1974, Lake Cascade filed a Complaint in this Court against the remaining six individuals who refused to expunge their affidavits from the public records: Bomengin,

Beswick, Updike, Madden, Javernick and Middlekauff. Lake Cascade alleged that these individuals had no interest in Lake Cascade's property, that the filed affidavits created a cloud on Lake Cascade's title to the real property involved which prevented Lake Cascade from selling the property free and clear of these claims, and the actions of these individuals were a violation of the automatic stay and they should be ordered to expunge their affidavits from the public records.

On May 21, 1975, this Court entered a Summary Final Judgment in favor of Lake Cascade and specifically ordered that the Defendants expunge the affidavits from the public record and declared the affidavits to be null and void and of no effect. The Summary Final Judgment further provided that the affidavits did not represent a cloud on the title of Lake Cascade to the subject property. The six Defendants named in that adversary proceeding were held to be in technical contempt of the automatic stay but were permitted to purge themselves by filing suitable documents in the public records indicating that they released any claimed interest in the subject property. The Final Summary Judgment further provided that the relief granted to Lake Cascade was without prejudice to any rights the Defendants may have and any remedies they may have against Lake Cascade other than by filing affidavits to affect the title of Lake Cascade to subject real property.

After the cloud on the real property was removed, Lake Cascade was authorized by this Court to sell the subject property free and clear of all liens and encumbrances to E. Dean Dishman and Patricia Dishman. By a separate order this Court also authorized the sale of a second parcel of real property to Leonard Mallea and Patricia Mallea free and clear of all liens and encumbrances. On March 18, 1976, this Court entered its Order Confirming Plan, and on June 30, 1977, this Court entered the Final Decree which provided *inter alia* that:

All creditors or claimants against the Debtors were restrained and enjoined from pursuing or attempting to pursue or commencing any suits or other proceedings at law or in equity against the Debtors or against any of the assets or property of the Debtors, directly or indirectly, on account of or based upon any right, claim or interest which any such creditor or claimant may have had in, to or against said Debtors, excepting only such liabilities and claims that were not dischargeable under § 17 and § 371 of the Bankruptcy Act of 1898....

The case was closed after the Final Decree was entered on June 30, 1977. On February 20, 1979, approximately two years later, the Defendants herein, Middlekauff, Beswick, Updike, Hales, and Lee, filed a Complaint, Case No. 2339, in the District Court of the Fourth Judicial District of the State of Idaho, in and for Valley County. In this suit they sought the imposition of an equitable lien on the subject property to secure to them certain rights in the nature of use restrictions on the subject real property. (Exh. Vol. I, Exh. #1). In due course, Lake Cascade filed an Answer and raised several affirmative defenses; specifically, that the claim was barred by res judicata and by the statute of limitations. In addition, according to Lake Cascade, the action was barred under previous Orders entered by this Court during the pendency of the Chapter XI case. (Exh. Vol. I, Exh. #2).

The Idaho District Court of the Fourth Judicial District (trial court) granted summary judgment in favor of Lake Cascade. This Court determined that the statute of limitations was dispositive of the claims of the Plaintiff and barred their claims. (Exh. Vol. I, Exh. #6). The Defendants appealed the trial court's decision to the Idaho Supreme Court. On December 9, 1982, the Idaho Supreme Court reversed the trial court and remanded the case for further proceedings. *See Middlekauff v. Lake Cascade, Inc.*, 103 Idaho 832, 654 P.2d 1385 (Idaho 1982). The Idaho Supreme Court examined the specific language contained in the Final Summary Judgment entered by this Court which stated:

Without prejudice to any rights the Defendants may have and any remedies they may have against the Plaintiff [Lake Cascade] other than by filing affidavits to affect the Plaintiff's land....

Based on this, the Idaho Supreme Court concluded that this language indicated that the Bankruptcy Court did not adjudicate the interest of the Defendants in the subject property, but only held that the affidavits were procedurally improper and void because they were in violation of the automatic stay. The Idaho Supreme Court held that the date used by the trial court for the determination of the statute of limitations was not appropriate and remanded the case for further factual findings by the trial court.

The trial court entered an order on February 11, 1985, on remand. This order imposed an equitable easement and held that the statute of limitations ran from impairment of the easement and, therefore, had *not* run at the time the suit was filed. The trial court also ordered the Malleas and the Dishmans, the purchasers of the subject property from Lake Cascade, to remove obstructions erected on the property involved so that the Defendants could exercise their easement. (Exh. Vol. II, Exh #13). The trial court held that the Plaintiffs, the Defendants in this adversary proceeding, had an interest that was enforceable against Lake Cascade and that continued in effect against Lake Cascade after the Chapter XI proceeding. Accordingly, Lake Cascade was ordered by the trial court to hold the disputed area in trust as a common area for use by the Plaintiffs. (Exh. Vol. II, Exh. #13).

Lake Cascade appealed this decision. On March 26, 1985, the trial court supplemented its previous order to emphasize that it took no position on whether the Malleas or Dishmans had a cause of action against Lake Cascade for mutual mistake of law, for breach of warranty of title or for any related cause. (Exh. Vol. II, Exh. #15).

On May 19, 1986, the Idaho Supreme Court affirmed the findings of the trial court recognizing the easement claimed by the Defendants and remanded the action to the trial court in order to determine whether the easement runs with the land or is personal, and if the easement runs with the land, then the trial court was to provide a specific description of the land covered by the easement. The Idaho Supreme Court held that when this Court ordered that the subject property be sold "free and clear of all liens and encumbrances" that this Court intended those terms to have a narrow construction, and after examining the Idaho Code of Statutes definition of "encumbrance" found that:

> Clearly, Plaintiffs' interest in the use of the common area does not readily fall within this definition. The bankruptcy court most likely intended a similar narrow construction of the term "encumbrances."

(Exh. Vol. III, Exh. #21). Moreover, the Idaho Supreme Court found that this Court's language in the Final Summary Judgment relating to the Defendants' rights and remedies, other than by affecting title to Plaintiff's land, could *not* mean that this Court had determined that the Defendants had no interest in the land because the "qualifying language" would have been unnecessary and superfluous since the Defendants would have no rights to pursue. (Exh. Vol. III, Exh. #21).

On July 10, 1986, Bric filed a Motion to Reopen the Chapter XI case. This Court granted the Motion and on August 7, 1986, reopened the case for the purpose of permitting Lake Cascade to bring this adversary proceeding against the Defendants. The Amended Complaint was filed on August 20, 1986. On August 22, 1986, the Defendants filed a Motion to Vacate the Order Reopening the Case or in the Alternative, to Dismiss the Adversary Proceeding. On September 23, 1986, the Defendants filed their Answer to the Amended Complaint which also contained several affirmative defenses.

In Count I, Lake Cascade seeks declaratory relief and requests a determination of the parties' rights and liabilities under this Court's prior orders. Count II of the Complaint seeks injunctive relief against the Defendants in order to prohibit them from any further action claiming any interest in certain real property owned by Lake Cascade in the State of Idaho. Count III seeks an order of contempt against the Defendants for their alleged willful and continuous violations of this Court's prior orders, judgments and decrees.

In opposition, the Defendants through affirmative defenses contend that Lake Cascade is barred from litigating any issues by collateral estoppel; is guilty of laches; and that in any event this Court should abstain from and not consider the issues raised by the Complaint and to dismiss the adversary proceeding. Defendants' Motion to Vacate the Order which reopened the closed case, or in the Alternative, to Dismiss contends that this Court erred in reopening the case and essentially reiterates the contention that Lake Cascade is guilty of laches and that the Court should abstain from hearing the adversary proceeding because the identical issues have been fully adjudicated in the courts of the State of Idaho.

On August 25, 1986, this Court entered an Order Denying Lake Cascade's Emergency Motion for Preliminary Injunction and Temporary Restraining Order and held that since there was no showing of irreparable harm from permitting the Idaho trial court to enter its order on a Motion for Summary Judgment denied the Motion. On August 14, 1986, the Idaho trial court entered a Judgment on the Motion for Summary Judgment and held that the easement is a covenant which runs with the land and provided a legal description of the subject real property. (Exh. Vol. III, Exh. #22).

The question arises whether or not the Act of 1898 applies to the Chapter XI case reopened after the effective date of the Bankruptcy Reform Act of 1978, or whether the new Bankruptcy Code as amended governs the reopened case. Sec-

tion 403(a) in Title IV of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 provides:

> A case commenced under the Bankruptcy Act and all matters and proceedings in or relating to any such case shall be conducted and determined under such Act as if this Act had not been enacted, *and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.* (emphasis added).

Thus, this case is without doubt governed by the Bankruptcy Act of 1898 and the adversary proceeding under consideration.

Considering the Motion to Vacate the Order which authorized the reopening of the closed Chapter XI case, it is well to state at the outset that the right to reopen closed estates in a Chapter XI case is governed by § 2(a)(8) of the Bankruptcy Act of 1898 which provides as follows:

> Close estates, by approving the final accounts and discharging the trustees, whenever it appears that the estates have been fully administered or, if not fully administered, that the parties in interest will not furnish the indemnity necessary for the administration of the estate; *and reopen estates for cause shown;* (emphasis added).

Bankruptcy Rule 515 in force at the relevant time provided:

> A case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause....

■ There is hardly any doubt that pursuant to § 2(a)(8) of the Bankruptcy Act of 1898 and Bankruptcy Rule 515, Lake Cascade had the right and the standing to seek to reopen the closed case in order to present its claim to this Court and obtain the relief it seeks. This leads to the ultimate question of whether or not this Court should favorably consider the claim and the relief sought by Lake Cascade or should abstain in light of the background and his-

tory of the long, drawn out litigation spanning more than seven years between Lake Cascade and the Defendants.

■ Lake Cascade acknowledges, as it must, that it did not seek relief in this Court initially because it purposefully elected to litigate the issues in the Idaho state courts. Bric and Lake Cascade clearly had ample opportunity to present their arguments to the Idaho state courts and in fact did avail themselves of this opportunity. Thus, in the last analysis the case at bar is nothing more than a different version of the issues already litigated and a last ditch attempt to retry all of the issues after seven years of litigation which include a complete trial, two appeals to the Idaho Supreme Court and two remands to the trial court, all of which ultimately ended adversely to the interests of Lake Cascade and Bric.

Formulating the issues in the fashion used by Lake Cascade is really an over simplification because the ultimate question was, and still is, whether or not the easement claimed by these Defendants remained valid and enforceable on the subject property or was it removed by this Court either by the Order Confirming the Sale and if not, at least by the Order of Confirmation. Since the Idaho courts already determined with finality that the claim of these Defendants were not liens or encumbrances under the laws of the State of Idaho, neither the order authorizing the sale free and clear of liens nor the Order of Confirmation could have affected whatever rights these Defendants have to the subject property.

Based on the foregoing, this Court is satisfied that it would be totally inappropriate for this Court to revisit the issues litigated in Idaho state court in spite of the fact that Bric and Lake Cascade contend that what they seek by this Court is to determine whether or not these Defendants violated the terms of the Order of Confirmation; therefore, this Court should be the forum to enforce their rights flowing from the Order of Confirmation.

■ One additional reason why Bric and Lake Cascade are not entitled to the relief

742

they seek. There is hardly any question based on this record that both of them are guilty of laches and should not be permitted this late date to come to this Court and seek an interpretation of the Order of Confirmation and its legal effect, a matter they could have accomplished immediately after these Defendants commenced the action to enforce their claimed rights in Idaho state court.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Vacate or in the Alternative, to Dismiss be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Order Reopening the closed estate be, and the same is hereby, vacated, and the above-captioned Chapter XI case be, and the same is hereby, dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Complaint for Declaratory Judgment, Injunctive Relief and Order of Contempt be, and the same is hereby, dismissed with prejudice.